IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANGEL L. MARTINEZ,

                        Plaintiff,

                                                Civ. Action No.
                                                9:04-CV-0440 (FJS/DEP)

        vs.

SCOTT THOMPSON, *et al.*,

                        Defendants.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

SIVIN & MILLER, LLP                     EDWARD SIVIN, ESQ.
170 Broadway
Suite 600
New York, NY 10038

FOR DEFENDANT:

HON. ANDREW M. CUOMO                    MARIA MORAN, ESQ.
Office of the Attorney General          SENTA B. SUIDA, ESQ.
State of New York                       Assistant Attorneys General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Angel L. Martinez, a New York State prison inmate who has been granted *in forma pauperis* status and, until recently, was proceeding *pro se,* has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.  Plaintiff's complaint contains an amalgamation of constitutional claims stemming from an incident which occurred on February 25, 2003, during which he was allegedly assaulted by defendant Scott Thompson, a corrections officer, and the events which followed.  Plaintiff asserts five separate causes of action, alleging 1) cruel and unusual punishment; 2) unlawful retaliation for having engaged in protected activity; 3) deliberate indifference to his safety and serious medical needs; 4) malicious prosecution; and 5) denial of due process, and seeks recovery of compensatory damages and other appropriate relief.

Currently pending before the court is a motion on behalf of the defendants seeking the entry of partial summary judgment.  While acknowledging the existence of triable issues of fact surrounding certain of plaintiff's claims, in their motion defendants assert that 1) portions of plaintiff's claims are subject to dismissal based upon his failure to satisfy

2

the requirement that he exhaust available, internal administrative remedies before filing suit; 2) plaintiff's claim of retaliation is deficient as a matter of law; 3) plaintiff has failed to allege and prove the requisite personal involvement on the part of defendant Hollins in the constitutional deprivations alleged; 4) plaintiff's due process claims surrounding a March 13, 2003 disciplinary hearing are subject to dismissal, both procedurally based upon an unsuccessful state court challenge regarding the discipline resulting from that hearing, and on the merits; and 5) neither plaintiff's complaint nor evidence in the record supports the claims raised against certain of the defendants. Plaintiff has opposed defendants' motion and cross-moved for an order permitting amendment of his complaint in order, *inter alia,* to add verbiage necessary to support a claim for recovery of punitive damages.

Having carefully reviewed the record in light of the parties' arguments, I recommend that defendants' motion be granted, and that plaintiff be permitted to amend his complaint, insofar as his request to add a demand for punitive damages is concerned, but that plaintiff's motion to amend otherwise be denied.[1]

---

[1]     Although plaintiff's motion for leave to amend falls within the purview of my non-dispositive jurisdiction, in light of the procedural posture of the case I have

I.      BACKGROUND

Plaintiff Angel L. Martinez is and was at the times relevant to his claims a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  From prior to February 25, 2003 until March 6, 2003, when he was transferred into the Mohawk Correctional Facility ("Mohawk"), plaintiff was designated to the Oneida Correctional Facility ("Oneida"), where most of the events precipitating his claims occurred.[2]  Amended Complaint (Dkt. No. 70) ¶¶ 1, 66.

The circumstances giving rise to plaintiff's claims occurred on February 25, 2003, shortly after his return from an outside medical trip. Amended Complaint (Dkt. No. 70) ¶¶ 2-31.  Plaintiff asserts that upon arrival at his housing unit at Oneida on that date, he was viciously assaulted, initially by Corrections Officer Scott Thompson, and subsequently by several other corrections workers who later appeared on the scene.  *Id.*  Following the incident, Martinez was taken to the prison infirmary, where photographs of his injuries were taken, although defendant R. Burdick, a registered nurse at the facility, refused to provide

_____

chosen to format my decision as a report and recommendation to the assigned trial judge, District Judge Frederick J. Scullin, Jr.

[2]      On March 28, 2003 plaintiff was transferred from Mohawk to the Southport Correctional Facility. Amended Complaint (Dkt. No. 70) ¶¶ 73A.

medical treatment for his injuries.  *Id.* ¶ 32, 53-55.  Plaintiff was then restrained and escorted to the facility's special housing unit ("SHU").  *Id.* ¶ 34.

Upon his arrival at the Oneida SHU, plaintiff was again assaulted by three corrections officers whose identities are unknown to him, causing additional bruises and abrasions to his body.  Amended Complaint (Dkt. No. 70) ¶ 35-38.  Plaintiff's complaint asserts that Corrections Sergeant Temple, a named defendant in the case, was present for the assault but failed to intercede on plaintiff's behalf.  *Id.* ¶ 39.  Following the second beating, Nurse Burdick visited the plaintiff in his cell, administering four Motrin tablets and advising that she would place him on a list for sick call the following day.  *Id.* ¶ 43.

Plaintiff maintains that despite the nurse's assurance that he would be listed for sick call, his injuries were not treated and his requests to be seen by a doctor or nurse were ignored.  Amended Complaint (Dkt. No. 70) ¶ 45.  Plaintiff also avers that during the period that followed he was denied meals, showers, and his prescribed allotment of recreation, and was further beaten by various corrections officials including defendant Pillmore, another corrections officer at the facility.  *Id.* ¶¶ 46-51.

A Tier III hearing was convened on February 28, 2003 regarding the incident which had occurred three days earlier.[3]  Amended Complaint (Dkt. No. 70) ¶ 51A.  Although plaintiff's complaint is silent on this issue, it appears that the hearing resulted from the issuance of a misbehavior report accusing Martinez of violating prison rules during the course of the incident.  The hearing was subsequently adjourned to a later date by the appointed hearing officer, Corrections Captain Lane.  *Id.*

Another event involving the plaintiff and corrections officials at Oneida occurred on March 5, 2003.  Amended Complaint (Dkt. No. 70) ¶¶ 56-63.  Plaintiff maintains that during the course of that incident he was again assaulted, on this occasion at the hands of Corrections Officers R. Siples, Duvall, and Labrague.  *Id.*  Following that incident Corrections Sergeant Samson came to plaintiff's cell, accompanied by a nurse, Corrections Officer Siples, and another officer, at which time photographs of plaintiff's body were taken, with the taking of those photographs also

---

[3]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

being separately video recorded.  *Id.* ¶ 64.

A misbehavior report was issued to Martinez on or about March 5, 2003 by Corrections Officer M. Duvall regarding the incident, charging him with assault on staff (Rule 100.11), violent conduct (Rule 104.11), and refusal to obey a direct order (Rule 106.10). Defendants' Exhibits (Dkt. No. 110-3) Exh. D.  Plaintiff was served with that misbehavior report on March 11, 2003, while at Mohawk.  *Id.*; *see also* Defendants' Exhibits (Dkt. No. 110-3) Exh. I.  Following plaintiff's waiver of his right to employee assistance and an interpreter, *see* Defendants' Exhibits (Dkt. No. 110-3) Exhs. F, I, a Tier III hearing was conducted beginning on March 13, 2005 to address the charges set forth in that misbehavior report, with Deputy Superintendent Naughton serving as the hearing officer.  *See* Defendants' Exhibits (Dkt. No. 110-3) Exhs. H, I.  Following that hearing plaintiff was found guilty of all three infractions, and a penalty which included one hundred eighty days of disciplinary confinement in a facilty SHU, with a corresponding loss of recreation, packages, commissary and telephone privileges and an additional recommendation that he forfeit three months of good time credits, was imposed.  *Id.*; *see also* Amended Complaint (Dkt. No. 70) ¶ 70.  On May 1, 2003 that determination was affirmed on

appeal by Donald Selsky, the DOCS Director of Special Housing/Inmate

Disciplinary Program.  Defendants' Exhibits (Dkt. No. 110-3) Exh. D at p.

25.  Plaintiff's request for reconsideration of that determination was

subsequently denied by defendant Selsky on June 26, 2003.[4]  *Id.* at 37.

On August 20, 2003, plaintiff petitioned the Oneida County Supreme

Court for relief pursuant to Article 78 of the New York Civil Practice Law

and Rules, seeking an order reversing the disposition of his March 13,

2003 superintendent's hearing.  Defendants' Exhibits (Dkt. No. 110-3)

Exh. D. Among the issues raised by Martinez in that petition was a

challenge to the finding of his waiver of the right to employee assistance in

connection with the hearing, the failure to provide him with an interpreter,

and his allegation of hearing officer bias.  *Id.*  Exh. D.  Following transfer of

the matter to that court, the New York State Supreme Court Appellate

Division, Fourth Department issued a decision on April 30, 2004 denying

plaintiff's Article 78 petition.  Defendants' Exhibits (Dkt. No. 110-3) Exh. F.

In its determination, the Fourth Department concluded that plaintiff had

---

[4]     The incidents resulting in injury to the plaintiff were the subject of an investigation beginning on or about March 12, 2003 by the New York State Police. Amended Complaint (Dkt. No. 70) ¶ 69.  Apparently as a result of that investigation, plaintiff was formally charged on April 24, 2003 with three counts of assault in the second degree.  *Id.* ¶ 74.  When those charges were presented to an Oneida County Grand Jury, however, that body voted to "no bill", resulting in dismissal of all charges against the defendant on or about June 11, 2003.  *Id.* ¶ 77.

effectively waived his right to employee assistance and failed to preserve

the interpreter issue by making a proper and timely request for that

accommodation.  *Id.* Exh. F.  The appellate court similarly concluded that

the record lacked any indication of bias on the part of the hearing officer,

or that the hearing outcome was a result of any such bias.  *Id.*

Plaintiff's application for leave to appeal that unfavorable determination to

the New York Court of Appeals was denied on September 9, 2004.  *Id.*

Exh. G.

II.    <u>PROCEDURAL HISTORY</u>

        Plaintiff commenced this action on April 19, 2004 and, after

protracted and oftentimes contentious proceedings centering principally

upon plaintiff's efforts to identify the John Doe corrections officers who

participated in the relevant events and to obtain pretrial discovery, plaintiff

filed an amended complaint, the pleading now before the court, on March

28, 2006.  Dkt. No. 70.  Named as defendants in Martinez's amended

complaint are Donald Selsky; Oneida Superintendent M. Hollins; Deputy

Superintendent of Security P. Naughton; Corrections Captain Lane;

Corrections Sergeants Donna Temple and James Doye; Dr. Robert

Pickels; Registered Nurse R. Burdick; and Corrections Officers Scott

9

Thompson, Larry T. Sisco, Thomas W. Novak, Scott A. Myers, M. Duvall, Pilmore, R. Siples, and R. Labrague, as well as four additional corrections officers identified only as "John Doe". Plaintiff's complaint, as amended, asserts five causes of action, alleging 1) cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments; 2) retaliation for his having engaged in protected activity, in violation of the First and Fourteenth Amendments to the United States Constitution; 3) deliberate indifference to his safety and medical needs, implicating the Eighth and Fourteenth Amendments; 4) malicious prosecution; and 5) deprivation of due process.

On May 18, 2007, defendants moved seeking the entry of partial summary judgment dismissing portions of plaintiff's claims. Dkt. No. 110. In their motion, defendants argue that 1) plaintiff's deliberate indifference claims against defendants Dr. Pickels and Nurse Burdick are subject to dismissal, based upon plaintiff's failure to pursue those claims though the internal DOCS grievance process prior to commencing suit; 2) all claims against Superintendent Hollins are subject to dismissal based upon the lack of the requisite degree of his personal involvement in the constitutional deprivations alleged; 3) the portion of plaintiff's due process

10

cause of action concerning the March 13, 2003 superintendent's hearing are barred based on the preclusive effect to which the adverse Article 78 determination regarding that disciplinary proceeding is entitled, and in any event lack merit; 4) plaintiff's claim of retaliation is deficient as a matter of law; and 5) certain of the defendants are entitled to dismissal of the various claims against them.  On November 28, 2007, the plaintiff, through counsel who had only recently appeared in the action, filed papers in opposition to defendants' motion and in support of a cross-motion for leave to file and serve a second amended complaint to clarify that he is seeking a punitive damage award, and to add additional claims.  Dkt. Nos. 118, 123.  Defendants have since responded in opposition to the cross-motion and in further support of their motion for partial summary judgment, Dkt. No. 127, and plaintiff has now filed a reply in further support of his motion for leave to amend.  Dkt. No. 130.  The parties' cross-motions, which are now ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Plaintiff's Motion for Leave to Amend

The objective of plaintiff's motion for leave to amend is two-fold. First, Martinez requests permission to add pendent state law claims of intentional infliction of emotional distress ("IIED"), based upon the conduct articulated in his initial amended complaint.  Secondly, plaintiff seeks to clarify that he is in fact seeking recovery of punitive damages for the constitutional deprivations alleged in his current amended complaint.

The standard for amendment of pleadings is generally relaxed, and not particularly controversial.  Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted based upon the circumstances (something which is not applicable in this action), a party may amend its pleading "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Under Rule 15(a), leave to amend ordinarily should be freely granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Elma R.T. v. Landesmann Int'l Mktg. Corp.,* No. 98-CIV.-662,

2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman*).

Notwithstanding the familiar and well-accepted precept that leave to amend should be granted freely and is typically permitted, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion then permitting amendment would be an act of futility which should not be sanctioned.  *See, e.g., Saxholm AS v. Dynal, Inc.,* 938 F. Supp. 120, 124 (E.D.N.Y. 1996); *In re Boesky Sec. Litig.,* 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).  If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend.  *Saxholm*, 938 F. Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F. Supp. 1022, 1029 (S.D.N.Y. 1995) and *Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)).

Generally, while a delay in making a motion to amend pleadings must be weighed as a factor in deciding whether or not to grant the motion, the delay by itself will not be reason to deny the motion.  *Phaneuf v. Tenneco, Inc.,* 938 F. Supp. 112, 115 (N.D.N.Y.1996) (Hurd, J.).  A

court must weigh good cause shown for the delay in moving versus dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to address the issue. *Id.* In addressing prejudice to the nonmoving party, however, the longer the period of unexplained delay, the less that will be required of the nonmoving party in terms of a showing of prejudice. *Id.*

This action was commenced on April 19, 2004. The time for the filing of dispositive motions in the case, which was at one point stayed and has been enlarged, expired on May 18, 2007. Discovery in the action, which has been unusually contentious, has long since been completed. Under these circumstances I am not inclined to recommend that plaintiff be permitted to amend his complaint to assert any new claims or matters which would require the reopening of discovery in order to avoid prejudice to the defendants in the case.

As relief, the complaint now before the court seeks

> from each named defendant the amount of
> $100,000.00 as compensatory damages for each
> separate cause of action, together with his
> attorney's fees and costs, and such additional relief
> as the Court may deem just and proper.

Amended Complaint (Dkt. No. 70) at pp. 17-18, Prayer for Relief

14

(emphasis in original).   That amended complaint was prepared by the

plaintiff *pro se*.  In his proposed second amended complaint, prepared by

his new counsel, plaintiff adds "and punitive damages in an amount to be

determined by the trier of fact" to the Prayer for Relief.  *See* Plaintiff's

Exhibits (Dkt. No. 123-16) Exh. 14 at 20, Prayer for Relief.  Defendants

object to the addition of this request for punitive damages as untimely.

A claim for punitive damages does not present a separate cause of

action distinct from any substantive claim upon which it is bottomed, but

instead constitutes merely a request for an additional form of relief to be

awarded in the event of a finding of liability.  *See Aniero Concrete Co., Inc.*

*v. New York City Constr. Auth.,* No. 94 CIV. 3506, 2000 WL 863208, at

*25 (S.D.N.Y. June 27, 2000).  In a contested action, the fact that a party

has not specifically requested recovery of punitive damages in a prayer for

relief does not necessarily preclude such an award.  Rule 54(c) of the

Federal Rules of Civil Procedure provides, in relevant part, that "[e]very . .

. final judgment should grant the relief to which the party is entitled, even

if the party has not demanded that relief in its pleadings."[5]  Fed. R. Civ. P.

---

[5]      The rule is distinctly different in a case where judgment by default is
sought; in such a matter, relief which is not explicitly requested in the unanswered
complaint may not be awarded, notwithstanding the provisions of Rule 54(c).  *See* Fed.
R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount,
what is demanded in the pleadings.").

54(c).  Under this rule courts have permitted awards of punitive damages in contested cases to a plaintiff whose complaint did not specifically request such an award, provided that the complaint could have been construed as alleging facts which would support such an award. *Greenburg v. Cross Island Indus., Inc.*, 522 F. Supp. 2d 463, 466 (E.D.N.Y. 2007)*; Newell v. Wisconsin Teamsters Joint Counsel No. 39*, No. 05-C-552, 2007 WL 2874938, at *2-4 (E.D. Wis. Sept. 28, 2007) (collecting cases); *see also Griffith Laboratories U.S.A., Inc. v. Pomper*, 607 F. Supp. 999, 1001 (S.D.N.Y. 1985).

In this instance plaintiff's amended complaint alleges constitutional deprivations readily known, if established, to admit of awards of punitive damages, including vicious assaults upon him by several of the named defendants.  Plaintiff's recent request to add a demand specifically tailored to punitive damages does not appear to implicate a matter which would warrant the need for further discovery on the defendants' part.  Given that the complaint was prepared by the plaintiff *pro se*, and when generously construed alleges sufficient facts which could give rise to an award of punitive damages, and further discerning no undue prejudice to the defendants in permitting this limited amendment which  presumably will

16

not require discovery beyond that which was contemplated in connection with plaintiff's substantive claims, I recommend that amendment be permitted to this limited extent.

The portion of plaintiff's motion which seeks permission to add newly-minted, pendent state law IIED claims does not fall into the same category.  While undeniably the facts supporting those claims are largely congruent with those forming the underpinnings of plaintiff's section 1983 claims, the causes of action are by no means co-extensive.[6]  Plaintiff's IIED claims also raise issues tied with defenses which, the defendants have indicated, they intend to interpose in response to those claims, including under N.Y. Correction Law § 24, and which would potentially raise additional issues concerning the scope of defendants' duties and

---

[6]     Under New York Law, a party who has been subjected to "'conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" may possess a claim for intentional infliction of emotional distress.  *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983) (quoting Restatement [Second] of Torts § 46, subd. [1], Comment d); *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58, 402 N.Y.S.2d 991, 992-93 (1978) (acknowledging a cause of action for intentional infliction of emotional distress in New York); *see also Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  To recover for intentional infliction of emotional distress, a plaintiff must establish four distinct elements, including 1) extreme and outrageous conduct; 2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; 3) severe emotional distress; and 4) a causal connection between the conduct and a cognizable injury.  *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

whether the acts complained of were carried out while in the discharge of those duties, as well as under the pertinent statute of limitations.[7]

In sum, under the circumstances now presented, including the fact that this action, once the pending motions are decided, is essentially trial ready, I recommend against permitting the plaintiff to amend his complaint in this action.  *See Evans v. Syracuse City School District*, 704 F.2d 44, 47-48 (2d Cir. 1983).

B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v.*

---

[7]       While not basing my decision on this ground, I have considerable doubt that plaintiff's IIED claims could withstand a dismissal motion based on N.Y. Correction Law § 24, believing that the case cited by the plaintiff in an effort to avoid a section 24 challenge, *Ierardi v. Sisco*, 119 F.3d 183, 186-87 (2d Cir. 1997), involving claims of sexual harassment allegedly committed by a special education teacher employed by the DOCS against the corrections officer assigned to the same facility, is materially distinguishable from the circumstances at bar.  I also tend to agree with the defendants that most, if not all, of plaintiff's IIED claims are barred by the controlling statute of limitations.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986);
*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d
77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if
it "might affect the outcome of the suit under the governing law."
*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of
New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material
fact is genuinely in dispute "if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at
248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special
latitude when defending against summary judgment motions, they must
establish more than mere "metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106
S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d
615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether
*pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial
burden of demonstrating that there is no genuine dispute of material fact
to be decided with respect to any essential element of the claim in issue;
the failure to meet this burden warrants denial of the motion. *Anderson*,

19

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.

Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

inappropriate where "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of

Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also

Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is

appropriate only when "there can be but one reasonable conclusion as to

the verdict").

### C.    Exhaustion of Remedies

In their motion defendants assert that plaintiff's deliberate medical

indifference claims against Dr. Pickels and Nurse Burdick are subject to

dismissal based upon his failure to file a grievance regarding that

deprivation and to pursue that grievance to completion.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* __ U.S. __,

21

127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While

placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias*, 495 F.3d at 41;

*Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[8]  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

        1.     Availability of Remedy

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[9]  7 N.Y.C.R.R. § 701.5(a).  The IGRC,

---

[8]     In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[9]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

which is comprised of inmates and facility employees, then issues a

determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an

appeal is filed, the superintendent of the facility next reviews the IGRC's

determination and issues a decision.  *Id.* § 701.5(c).  The third level of the

process affords the inmate the right to appeal the superintendent's ruling

to the Central Office Review Committee ("CORC"), which makes the final

administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a

basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Despite an inmate's entitlement under most circumstances to file

and pursue a grievance in accordance with the IGP, there are

circumstances under which the grievance procedure nonetheless is

deemed not to have been available to an inmate plaintiff.  *See Hemphill*,

380 F.3d at 687-88.  Thus, for example, "[e]xhaustion may be considered

unavailable in situations where plaintiff is unaware of the grievance

procedures or did not understand it, . . . or where defendants' behavior

25

prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available."  *Id.* at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

From a review of the record before the court it appears that the claims now being raised by the plaintiff as against defendants Dr. Pickels and Nurse Burdick constitute grievable controversies as defined under the IGP.  The record now before the court reflects the filing by plaintiff of two grievances addressing some of the matters set forth in his complaint, including Inmate Grievance No. MHK-7337-03 on March 23, 2003, and Inmate Grievance MHK-7338-03, also on March 23, 2003, both while at Mohawk.  *See* Defendants' Exhibits (Dkt. No. 110-3) Exhs. A, B.  Neither

26

of those grievances addressed plaintiff's claim of deliberate medical indifference.   Plaintiff has asserted no basis to conclude that he misunderstood the grievance process, nor does he argue that through their actions the defendants improperly deterred his filing of a grievance, and the record discloses no grounds for either finding.  Accordingly, I conclude that there was an administrative remedy available to the plaintiff in this case at the times relative to his claims.

### 2.   Presentation of Defense/Estoppel

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).  In this instance, defendants have raised, as an affirmative defense, plaintiff's failure to exhaust available remedies, *see* Answer (Dkt. No. 108) ¶ 44, and plaintiff has offered no basis for finding that defendants Dr. Pickels and Nurse Burdick should be estopped from pursuing the defense.

### 3.   Special Circumstances

27

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies.  *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).

Plaintiff has not asserted, nor does the record disclose, any special circumstances which would justify overlooking plaintiff's failure to properly exhaust available administrative remedies.  Accordingly, as plaintiff appears to acknowledge in his motion papers, which do not contain a response to the exhaustion argument now raised by the defendants, plaintiff's claim of medical indifference are subject to dismissal as against defendants Dr. Pickels and Nurse Burdick.

D.    Personal Involvement

28

Defendants' motion also seeks dismissal of plaintiff's claims against defendant Hollins, the superintendent at Oneida.  Defendants' motion is predicated upon that defendant's position and the fact that plaintiff's complaint fails to allege his personal involvement in the constitutional deprivations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly

participated in the challenged conduct; 2) the supervisor, after learning of
the violation through a report or appeal, may have failed to remedy the
wrong; 3) the supervisor may have created or allowed to continue a policy
or custom under which unconstitutional practices occurred; 4) the
supervisor may have been grossly negligent in managing the subordinates
who caused the unlawful event; or 5) the supervisor may have failed to act
on information indicating that unconstitutional acts were occurring.  *Iqbal
v. Hasty*, 490 F.3d 143, (2d Cir. 2007); *see also Richardson*, 347 F.3d at
435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d
Cir. 1986).

Plaintiff's claims against defendant Hollins are limited to those
alleging, in purely conclusory terms, that the superintendent was generally
aware of constitutional violations experienced by prisoners at Oneida but
failed to conduct a proper investigation into the matter.  *See*, *e.g.*,
Amended Complaint (Dkt. No. 70) ¶ 72A.  Such conclusory allegations,
without more, are insufficient to establish a basis for finding personal
involvement in constitutional violations.  *See Friedl v. City of New York*,
210 F.3d 79, 85-86 (2d Cir. 2000); *see also Vazquez v. Parks*, No. 02 CV
1735, 2003 WL 1442087, at *9 (S.D.N.Y. Feb. 4, 2003) ("[A] plaintiff

30

alleging a Section 1983 . . . claim must set forth specific and detailed factual allegations of personal involvement as opposed to bald assertions and conclusory terms.") (citations and internal quotations omitted). Finding that the record lacks any evidence from which a reasonable factfinder could conclude that defendant Hollins had any personal involvement in the constitutional violations alleged, and noting that in his opposition to defendants' motion plaintiff does not argue to the contrary, I recommend dismissal of plaintiff's claims against that defendant.

      E.     Effect of State Court Article 78 Proceedings

Defendants next seek dismissal of plaintiff's procedural due process claims arising out of the March 13, 2003 disciplinary hearing. That request is based upon plaintiff's unsuccessful state court Article 78 challenge to the disposition resulting from that hearing.

Both the Full Faith and Credit Clause of the United States Constitution, *see* U.S. Const. art. IV, § 1, and the corresponding Full Faith and Credit statute, 28 U.S.C. § 1738, require that a federal court accord a state court judgment the same preclusive effect which it would merit under the law of the state from which it originated. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984);

*Kremer Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883, 1889-90 (1982); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  This principle applies fully to claims brought pursuant to 42 U.S.C. § 1983. *Migra*, 465 U.S. at 84-85, 104 S. Ct. at 897-98; *Allen v. McCurry*, 449 U.S. 90, 103-04, 101 S. Ct. 411, 419-20 (1980); *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996).  Since the underlying state court determination at issue in this case originated in New York, the law of that state controls in determining the extent of the preclusive effect of which the Article 78 determination in response to Farid's petition is deserving.[10]  *Giakoumelos*, 88 F.3d at 59; *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *LaFleur v. Whitman*, 300 F.3d 256, 271-72 (2d Cir. 2002).

a)   Claim Preclusion

As the Second Circuit explained in *Marvel*, claim preclusion, also known as *res judicata*, requires that a final judgment on the merits of an action be given preclusive effect, barring parties as well as those in privity

---

[10]     While the law of New York, rather than federal principles, applies to determine the preclusive effect to be given to the state courts' determinations in response to plaintiff's Article 78 petition, this is a distinction without a difference since, as the Second Circuit has noted, "there is no discernable difference between federal and New York law concerning *res judicata* and collateral estoppel."  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pike v. Freeman,* 266 F.3d 78, 90 n.14 (2d Cir. 2001)).

with them from relitigating in a subsequent action a claim which was or could have been raised in the prior suit.  *Marvel*, 310 F.3d at 286-87; *see also Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21, 28 (2d Cir. 1986) (citing, *inter alia*, *Migra*), *overruled on other grounds, Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002).

In this case it is clear, based upon well-established case authority, that the prior unfavorable Article 78 determination did not serve to foreclose the plaintiff from commencing this subsequent section 1983 civil rights action for damages, since such relief is unavailable in an Article 78 proceeding.  *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *Allen v. Coughlin*, No. 92 Civ. 6137, 1995 WL 117718, at *3 (S.D.N.Y. Mar. 17, 1995).  Accordingly, plaintiff's claims for damages in this section 1983 action are not barred by *res judicata* based upon decisions rendered in the prior Article 78 proceeding, even assuming that all of the requirements for claim preclusion are otherwise met.

### b)     Issue Preclusion

Issue preclusion, a more narrow doctrine often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has

been decided against that party or its privy.  *McKithen v. Brown*, 481 F.3d

89, 105 (2d Cir. 2007); *Marvel*, 310 F.3d at 288-89.  Under New York law,

in order for issue preclusion to apply two elements must be established;

first, the issue must both "actually and necessarily" have been decided in

a prior proceeding, and secondly, the party against whom the doctrine is

being urged must have been afforded a full and fair opportunity to litigate

the issue in the first proceeding.  *McKithen*, 481 F.3d at 105; *see also*

*Giakoumelos*, 88 F.3d at 59; *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.

1995).

In this instance the record firmly reveals that following the March 13,

2003 disciplinary hearing, plaintiff filed an Article 78 proceeding

challenging the results of that proceeding.  In his Article 78 petition

Martinez raised, and the Fourth Department resolved against him, claims

identical to those urged in support of his procedural due process claim,

including the denial of his right to employee assistance, the failure to

provide an interpreter, and hearing officer bias.[11]  *See* Defendants'

---

[11]     While plaintiff's Article 78 petition made reference to his contention that
the hearing was not fully recorded and that at one point the tape recorder was turned
off, *see* Defendants' Exhibits (Dkt. No. 110-3) Exh. D at pp. 7-8, that issue was not
specifically addressed by the state court.  This fact does not serve to salvage plaintiff's
due process claim as it relates to that hearing, however, since it is well-established that
the procedural due process requirements of the Fourteenth Amendment do not extend
to mandate that a disciplinary hearing be recorded.  *Johnson v. Goord*, 487 F. Supp.

Exhibits (Dkt. No. 110-3) Exh. D.

The record also reveals that despite his *pro se* status, plaintiff was given a full and fair opportunity to litigate his claims.  While no evidentiary hearing was conducted, plaintiff has cited no cases, nor is the court aware of any, which hold that an evidentiary hearing is a prerequisite to giving preclusive effect to a prior judicial ruling.  Accordingly, I recommend that this portion of defendants' motion be granted, and that all due process claims regarding plaintiff's March 13, 2003 superintendent hearing be dismissed.  And, because his sole involvement in the matters set forth in plaintiff's complaint surround his role in that disciplinary hearing, I recommend that all claims asserted in the action as against defendant Naughton be dismissed.

F.   <u>Retaliation</u>

Plaintiff's second cause of action alleges that adverse action was taken against him, including by his being subjected to the use of excessive

---

2d 377, 386 (S.D.N.Y. 2007) ("While the recording of Tier III hearings is required by New York state law, it is not required to satisfy procedural due process. . . . Inmates are entitled to a written transcript of the disposition and evidence relied on, not to audio recordings or an accurate transcript of the proceedings.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-65, 94 S. Ct. 2963, 2978-79(1974)); *Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002) ("While New York law requires that an electronic record of a disciplinary hearing be maintained, such a record is not constitutionally required.") (citations omitted).

force and disciplinary confinement, in retaliation for having exercised his right to file grievances.  Amended Complaint (Dkt. No. 70) ¶¶ 85-86. Noting that the adverse actions forming the basis for plaintiff's retaliation claim occurred prior to the filing by plaintiff of two grievances on March 23, 2003, after his transfer out of Oneida and into Mohawk, defendants urge dismissal of this claim, arguing that no reasonable factfinder could conclude that the actions complained of were motivated by retaliatory animus.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002).  If the plaintiff

36

carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

It has been observed that claims of retaliation are easily invoked, and susceptible of abuse, particularly by prison inmates. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983). Accordingly, courts "must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Phelps v. Kapnolas*, 308 F.3d 180 (2002) (citing *Flaherty,* 713 F.3d at 13). Conclusory allegations, particularly in the face of a summary judgment motion seeking dismissal of such a claim, will not suffice to avoid dismissal of a retaliation cause of action. *Flaherty,* 713 F.2d at 13.

As can be seen, evaluation of claims of retaliation is a particularly fact intensive exercise, since such claims revolve around both the

engaging in protected conduct, as well as establishment of a nexus between that conduct and the adverse action ultimately taken.  In this instance the record discloses that the adverse actions allegedly taken by the defendants toward the plaintiff between February 25, 2003 and March 5, 2003, while at Oneida, could not have been prompted by animus in retaliation for having filed the two grievances on March 23, 2003, while at Mohawk, concerning those events.[12]  In response to defendants' arguments in this regard, plaintiff asserts the existence of triable issues of fact as to whether defendants Thompson, Duvall and Labrague filed false misbehavior reports in retaliation for his having contemplated the exercise of the constitutional right to redress grievances.  *See* Plaintiff's Memorandum (Dkt. No. 123-17) at 1-2.  Standing alone, the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273 (1988)).  The further

---

[12]     It is equally apparent that the defendants' actions, though extreme according to plaintiff's complaint, did not deter him from lodging complaints regarding those actions.  The fact that the plaintiff's First Amendment rights were therefore not chilled by defendants' allegedly retaliatory actions, however, does not preclude him from asserting a First Amendment retaliation claim.  *See Gill v. Pidlychak,* 389 F.3d 379, 381 (2d Cir. 2004).

assertion that the false misbehavior report has been prompted by retaliatory animus and relates to an inmate having engaged in protected activity, however, suffices to state a claim for retaliation. *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

Plaintiff's amended complaint contains no allegations regarding any efforts on his part to lodge formal protests regarding reactions of the defendant, including corrections officer Thompson, prior to the filing of grievances on March 23, 2003.  In an affidavit given in opposition to defendants' motion, Martinez merely alleges in conclusory fashion that "[i]n the days immediately following my February 25, 2003 'threat' to file a complaint against Thompson, Thompson and several other corrections officers engaged in [a] pattern of retaliation against me."  Martinez Aff. (Dkt. No. 120) ¶ 6.  No specifics are provided by the plaintiff regarding his "threat" to file a complaint, nor has he offered any evidence from which a reasonable factfinder could find the requisite nexus between that "threat" and the ensuing issuance of misbehavior reports.  Under these circumstances, based upon plaintiff's failure to come forward with evidence establishing the existence of material, genuinely disputed facts regarding his retaliation claim, I recommend that this portion of

defendants' motion be granted and plaintiff's second cause of action be dismissed as a matter of law.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff in this action, originally proceeding *pro se* but now represented by counsel, has asserted a variety of constitutional claims arising from a series of incidents occurring on and shortly after February 25, 2003, while he was housed at Oneida. Those claims include a procedural due process cause of action which plaintiff is barred from litigating as a result of an unsuccessful state court Article 78 challenge to the March 13, 2003 disciplinary action, as well as deliberate medical indifference claims which he did not pursue internally through the DOCS administrative grievance process available to him prior to commencing this action, and thus is foreclosed from litigating in this action. Plaintiff's complaint also includes a retaliation claim stated in purely conclusory terms, for which there is no evidentiary support in the record. Finally, plaintiff's complaint asserts claims against defendant Hollins, in his position as superintendent of Oneida, but provides no basis to conclude that he was personally involved in the actions forming the basis for plaintiff's constitutional claims. Under these circumstances, it is hereby

40

RECOMMENDED that defendants' motion for partial summary judgment (Dkt. No. 110) be GRANTED, and that plaintiff's deliberate medical indifference claims against defendants Dr. Pickels and Nurse Burdick, all claims against defendants Hollins and Naughton, all procedural due process claims arising out of the March 13, 2003 superintendent's hearing, and plaintiff's retaliation claim, be DISMISSED, and that plaintiff's cross motion for leave to amend his complaint (Dkt. No. 118) be DENIED, except insofar as his request for leave to assert a claim for punitive damages is concerned, and that the matter be set down for trial with respect to the remaining claims, including whether 1) on February 25, 2003 defendants Thompson, Sisco, Myers, Novak and/or Temple failed to prevent the use of excessive force toward the plaintiff; 2) on March 3, 2005 defendants Duvall and Labrague used or failed to prevent the use of excessive force toward the plaintiff while in the Oneida SHU; 3) defendant Pilmer used or failed to prevent the use of excessive force toward the plaintiff in the Oneida SHU on February 26, 2003 and refused plaintiff's request for medical attention on or between February 26, 2003 and March 2, 2003; 4) defendants Thompson, Sisco, Myers and Novak subjected the plaintiff to malicious prosecution; and 5) defendants Lane

41

and Selsky violated plaintiff's due process rights with respect to the March 14, 2003 disciplinary hearing.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:     February 21, 2008
           Syracuse, NY


David E. Peebles
U.S. Magistrate Judge