**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANGEL L. MARTINEZ,**

                               **Plaintiff,**

              **v.**                                                    **9:04-CV-440**
                                                                        **(FJS/DEP)**

**SCOTT THOMPSON, Correctional Officer,**
**Oneida Correctional Facility; LARRY**
**SISCO, Correctional Officer, Oneida**
**Correctional Facility; SCOTT MEYERS,**
**Correctional Officer, Oneida Correctional**
**Facility; THOMAS NOVAK, Correctional**
**Officer, Oneida Correctional Facility;**
**B. LABRAGUE, Correctional Officer,**
**Oneida Correctional Facility; M. DUVALL,**
**Correctional Officer, Oneida Correctional**
**Facility, DONNA TEMPLE, Correctional**
**Sergeant, Oneida Correctional Facility;**
**R. BURDICK, Registered Nurse, Oneida**
**Correctional Facility; ROBERT PICKLE,**
**Doctor, Oneida Correctional Facility;**
**M. HOLLINS, Superintendent, Oneida**
**Correctional Facility; JOHN DOES 1-7,**
**Correctional Officers, Oneida Correctional**
**Facility; DONALD SELSKY, Director of**
**Special Housing; PILMORE, Correctional**
**Officer; P. NAUGHTON, Deputy Superintendent**
**of Security; CAPTAIN LANE; and R. SIPLES,**
**Correctional Officer,**

                               **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**SIVIN & MILLER, LLP**                       **EDWARD SIVIN, ESQ.**
170 Broadway
Suite 600
New York, New York 10038
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**      **MARIA MORAN, AAG**
**STATE ATTORNEY GENERAL**      **SENTA B. SIUDA, AAG**
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In a Report and Recommendation dated February 21, 2008, Magistrate Judge Peebles recommended that this Court grant Defendants' motion for partial summary judgment, deny Plaintiff's cross-motion for leave to amend his complaint except insofar as his request for leave to assert a claim for punitive damages is concerned, and schedule a trial in this action with regard to the remaining claims. *See* Dkt. No. 131. Plaintiff filed objections to some of these recommendations. *See* Dkt. No. 132.

Specifically, Plaintiff objects to Magistrate Judge Peebles' recommendations that this Court dismiss Plaintiff's retaliation claims against Defendants Thompson, Duvall, and LaBrague; dismiss Plaintiff's procedural due process claim against Defendant Naughton; and deny Plaintiff's cross-motion to amend his complaint to allege intentional-infliction-of-emotional-distress claims. *See* Plaintiff's Objections at 1.[1] The Court will address each of Plaintiff's objections in turn.

---

[1] Plaintiff does not object to Magistrate Judge Peebles' recommendations that the Court dismiss his medical indifference claims against Dr. Pickles and Nurse Burdick and dismiss his claims against Defendant Hollins. The Court finds that Magistrate Judge Peebles' recommendations with respect to these claims are legally correct and, therefore, adopts these recommendations.

## II. DISCUSSION

**A.      Plaintiff's retaliation claims against Defendants Thompson, Duvall and LaBrague**

Plaintiff alleges that Defendants took certain adverse actions against him, including subjecting him to the use of excessive force and disciplinary confinement, in retaliation for his having exercised his right to file grievances.  *See* Amended Complaint at ¶¶ 85-86.  In support of their motion for partial summary judgment, Defendants argued that the adverse actions that form the basis for Plaintiff's retaliation claim occurred prior to Plaintiff filing two grievances on March 23, 2003, after his transfer from Oneida Correctional Facility to Mohawk Correctional Facility, and, therefore, no reasonable factfinder could conclude that the actions about which Plaintiff complains were motivated by retaliatory animus.

As Magistrate Judge Peebles noted,

> to state a *prima facie* claim under § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. . . . If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." . . . If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. . . .

*See* Report and Recommendation, dated February 21, 2008, at 36-37 (internal quotations and other citations omitted).

Applying these legal principles to this case, Magistrate Judge Peebles concluded that "the record discloses that the adverse actions allegedly taken by the defendants toward the plaintiff

between February 25, 2003 and March 5, 2003, while at Oneida, could not have been prompted by animus in retaliation for having filed the two grievances on March 23, 2003, while at Mohawk, concerning those events." *See id.* at 38 (footnote omitted).  Moreover, Magistrate Judge Peebles found that "Plaintiff's amended complaint contains no allegations regarding any efforts on his part to lodge formal protests regarding reactions of the defendant[s], including corrections officer Thompson, prior to the filing of grievances on March 23, 2003." *See id.* at 39.

In addition, Magistrate Judge Peebles found that, although in his affidavit in opposition to Defendants' motion, Plaintiff had "allege[d] in conclusory fashion that '[i]n the days immediately following my February 25, 2003 "threat" to file a complaint against Thompson, Thompson and several other corrections officers engaged in [a] pattern of retaliation against me.'  Martinez Aff. (Dkt. No. 120) ¶ 6," Plaintiff had not provided any specifics "regarding his 'threat' to file a complaint, nor ha[d] he offered any evidence from which a reasonable facfinder could find the requisite nexus between that 'threat' and the ensuing issuance of misbehavior reports." *See id.* Therefore, "based upon plaintiff's failure to come forward with evidence establishing the existence of material, genuinely disputed facts regarding his retaliation claim," Magistrate Judge Peebles recommended that the Court dismiss Plaintiff's second cause of action. *See id.* at 39-40.

In his objections, Plaintiff states that "[t]he gravamen of plaintiff's retaliation claims is that Thompson, Duvall and LaBrague filed false misbehavior reports against plaintiff on February 26, 2003 and March 5, 2003 in retaliation for plaintiff's stated intention on February 25, 2003 to complain to a sergeant about Thompson's actions toward plaintiff." *See* Plaintiff's Objections at 2 (citing Plaintiff's Memorandum of Law in Partial Opposition to Defendants' motion for Partial Summary Judgment, Docket No. 121, pp. 10-12) (footnote omitted).  Plaintiff

explains further that he is not contending that Defendants Thompson, Duvall and LaBrague filed false misbehavior reports in response to his filing two grievances on March 23, 2003. *See id.* at n.1 (citing Report and Recommendation, p. 38).

In addition, Plaintiff asserts that he has offered specific evidence regarding the "threat" and sufficient evidence from which a reasonable factfinder could find the required nexus between the "threat" and the issuance of the misbehavior reports. *See id.* at 3. Plaintiff notes that, in his affidavit in opposition to Defendants' motion, he alleged that on February 25, 2003, he "'told Thompson that [he] wanted to speak to a sergeant to complain about Thompson's actions.'" *See id.* (citing Docket No. 120, par. 4). Moreover, Plaintiff states that, at his deposition, he testified to this same fact. *See id.* (citing Docket No. 123, Exhibit 3, p. 18).

With respect to the nexus between the threat and the issuance of the misbehavior reports, Plaintiff asserts that, in his response to Defendants' motion, he stated that "Thompson filed the first misbehavior report on February 26, 2003, just one day after plaintiff asked to see a sergeant to complain about Thompson's behavior." *See id.* at 4 (citing Plaintiff's Response to Defendants' Local 7.1(a)(3) Statement, Docket No. 119, par. 23). Plaintiff also notes that, prior to the filing of that false report, he "had an unblemished disciplinary record; he had never been issued a misbehavior report during his more than seven years of incarceration . . . [and he was] ultimately . . . vindicated when the charges filed against him by Thompson were administratively dismissed. . . ." *See id.* (internal citations omitted). Finally, Plaintiff contends that "one week after the February 26, 2003 incident Thompson's co-worker, C.O. LaBrague, assaulted plaintiff while stating to plaintiff, 'I saw Thom [referring to defendant Scott Thompson] this morning, he said to tell you hi.' . . ." *See id.* (internal citation omitted).

Based on Plaintiff's objections, it now appears that his retaliation claims against Defendants Thompson, Duvall and LaBrague also included their alleged response to his "threat" to Defendant Thompson on February 25, 2003, that he wanted to see a sergeant to complaint about Defendant Thompson's conduct.  According to the affidavit that Plaintiff filed in opposition to Defendants' motion for partial summary judgment, a few minutes after he told Defendant Thompson that he wanted to speak to a sergeant to complain about Defendant Thompson's conduct, Defendant Thompson physically attacked him.  *See* Affidavit of Angel Martinez, sworn to November 28, 2007 ("Martinez Aff."), at ¶ 4.  Plaintiff also contends that the next day Defendant Thompson filed a false misbehavior report against him, accusing him of attacking Defendant Thompson during the February 25, 2003 incident, *see id.* at ¶ 7, and as stated, Plaintiff contends that, on March 5, 2003, Defendants LaBrague and Duvall filed a false misbehavior report against him, accusing him of attacking them, *see id.* at ¶ 9.  The Court concludes that this elucidation of Plaintiff's claims in his amended complaint now gives rise to an issue of fact.

In this case, Plaintiff's alleged "threat" to complain to a sergeant about Defendant Thompson's conduct constitutes protected conduct.  If Defendants Thompson, Duvall and LaBrague did file false misbehavior reports against Plaintiff in retaliation for this "threat," then such conduct may constitute retaliation under § 1983.

Thus, although the Court examines Plaintiff's allegations with skepticism, it finds that they are sufficient to raise an issue of fact about whether Defendants Thompson, Duvall and LaBrague were retaliating against him for asking to speak to a sergeant about Defendant Thompson's conduct when they filed the allegedly false misbehavior reports against him.

-6-

Therefore, the Court rejects Magistrate Judge Peebles' recommendation to dismiss these claims and denies Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims against Defendants Thompson, Duvall and LaBrague.

**B.    Plaintiff's due process claims against Defendant Naughton**

Magistrate Judge Peebles concluded that *collateral estoppel* barred Plaintiff from relitigating his due process claims based upon the March 13, 2003 disciplinary hearing. Magistrate Judge Peebles noted that "the record firmly reveals that following the March 13, 2003 disciplinary hearing, plaintiff filed an Article 78 proceeding challenging the results of that proceeding . . . [and that] [i]n his Article 78 petition, [Plaintiff] raised, and the Fourth Department resolved against him, claims identical to those urged in support of his procedural due process claim, including the denial of his right to employee assistance, the failure to provide an interpreter, and hearing officer bias." *See* Report and Recommendation at 34 (citing Defendants' Exhibits (Dkt. No. 110-3) Exh. D) (footnote omitted).  Magistrate Judge Peebles also referred to the fact that, although "plaintiff's Article 78 petition made reference to his contention that the hearing was not fully recorded and that at one point the tape recorder was turned off, *see* Defendants' Exhibits (Dkt. No. 110-3) Exh. D at pp. 7-8, that issue was not specifically addressed by the state court." *See id.* at n.11.  However, Magistrate Judge Peebles found that this fact did not "salvage plaintiff's due process claim as it relates to that hearing . . . [because] it is well-established that the procedural due process requirements of the Fourteenth Amendment do not extend to mandate that a disciplinary hearing be recorded." *See id.* at n.11 (citations omitted).

Finally, Magistrate Judge Peebles concluded that Plaintiff had a full and fair opportunity

to litigate his due process claims in the Article 78 proceeding and that, although "no evidentiary hearing was conducted, plaintiff has cited no cases, nor is the court aware of any, which hold that an evidentiary hearing is a prerequisite to giving preclusive effect to a prior judicial ruling." *See id.* at 35.  Therefore, Magistrate Judge Peebles recommended that this Court dismiss all of Plaintiff's due process claims related to his March 13, 2003 disciplinary hearing, including all claims against Defendant Naughton.  *See id.*

The Court has reviewed the record in its entirety with regard to this issue in light of Plaintiff's objections to Magistrate Judge Peebles' recommendation.  Having done so, the Court concludes that it is clear that Plaintiff raised the issue that he had not waived his right to an employee assistant at the disciplinary hearing and that the Fourth Department ruled against him on that claim.  Therefore, the Court concludes that Defendants have met their burden to demonstrate that "the identical issue was previously decided . . ."  *Colon*, 58 F.3d at 869 (citation omitted).  Likewise, the Court finds that Plaintiff had a full and fair opportunity to litigate this claim in the Article 78 proceeding.

Under these circumstances, the Court agrees with Magistrate Judge Peebles that collateral estoppel bars Plaintiff from litigating his due process claims arising out of the March 13, 2003 disciplinary hearing in this action.  Accordingly, the Court grants Defendants' motion for summary judgment with respect to these claims and dismisses all of Plaintiff's due process claims arising from his disciplinary hearing on March 13, 2003; and, because these are the only claims he asserts against Defendant Naughton, the Court dismisses all of Plaintiff's claims against this Defendant.

**C.** **Plaintiff's cross-motion for leave to amend his complaint to add state-law claims for intentional infliction of emotional distress**

With regard to Magistrate Judge Peebles' recommendation that the Court deny Plaintiff's cross-motion for leave to amend his complaint to add state-law claims for intentional infliction of emotional distress, the Court finds that Plaintiff's objections to that recommendation are without merit. Therefore, the Court adopts that recommendation for the reasons stated in the Report and Recommendation.

## III. CONCLUSION

According, after carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' February 21, 2008 Report and Recommendation is **ADOPTED IN PART AND REJECTED IN PART**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's deliberate medical indifference claims against Defendants Dr. Pickles and Nurse Burdick, with respect to Plaintiff's claims against Defendant Hollins, and with respect to Plaintiff's claims against Defendant Naughton; and the Court further

**ORDERS** that Defendants' motion for summary judgment with regard to Plaintiff's retaliation claims against Defendants Thompson, Duvall, and LaBrague for filing false misbehavior reports against him on February 26, 2003, and March 5, 2003, because he "threatened" to complain to a sergeant about Defendant Thompson's conduct on September 25, 2003, is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to any due process claims that Plaintiff has asserted against any Defendant arising out of the March 13, 2003 disciplinary hearing; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend his complaint is **GRANTED** insofar as this request involves the addition of a claim for punitive damages; and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend his complaint is **DENIED** insofar as this request involves leave to assert claims of intentional infliction of emotional distress; and the Court further

**ORDERS** that Plaintiff shall file his second amended complaint within **ten (10) days of the filing date of this Order**; and the Court further

**ORDERS** that the this case is referred to Magistrate Judge Peebles for the purpose of holding a final pretrial conference.[2]

**IT IS SO ORDERED.**

Dated: March 30, 2008
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Court Judge

---

[2] The remaining claims in this action are (1) Plaintiff's claim that Defendants Thompson, Duvall and LaBrague retaliated against him by filing false misbehavior reports against him on February 26, 2003, and March 5, 2003, because he threatened to complain to a sergeant about Defendant Thompson's conduct on February 25, 2003; (2) Plaintiff's claim that, on February 25, 2003, Defendants Thompson, Sisco, Myers, Novak and/or Temple failed to prevent the use of excessive force against him; (3) Plaintiff's claim that on March 3, 2005, Defendants Duvall and LaBrague used or failed to prevent the use of excessive force toward Plaintiff while he was in the Oneida Correctional Facility's SHU; (4) Plaintiff's claim that Defendant Pilmore used or failed to prevent the use of excessive force toward Plaintiff in the Oneida Correctional Facility's SHU on February 26, 2003, and refused Plaintiff's request for medical attention on or between February 26, 2003, and March 2, 2003; (5) Plaintiff's claim that Defendants Thompson, Sisco, Myers and Novak subjected Plaintiff to malicious prosecution; and (6) Plaintiff's claim that Defendants Lane and Selsky violated Plaintiff's due process rights with respect to the March 14, 2003 disciplinary hearing.