UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x

ANGEL L. MARTINEZ,

                     Plaintiff,

vs.

SCOTT THOMPSON; LARRY SISCO;
SCOTT MEYERS; THOMAS NOVAK;
R. LABRAGUE; MICHAEL DUVALL;
DONNA TEMPLE; DONALD LANE;
DONALD SELSKY; R. SIPLEY,

                     Defendants.

--------------------------------------------x

            Transcript of Jury Trial held on
September 12, 2008, at the James Hanley Federal Building,
100 South Clinton Street, Syracuse, New York, the HONORABLE
DAVID E. PEEBLES, United States District Judge, Presiding.

                A P P E A R A N C E S

For Plaintiff:       SIVIN, MILLER LAW FIRM
                  Attorneys at Law
                  170 Broadway
                  Suite 600
                  New York, New York 10038
                    BY:  GLENN D. MILLER, ESQ.
                        EDWARD SIVIN, ESQ.

For Defendants:      OFFICE OF THE ATTORNEY GENERAL
                  STATE OF NEW YORK
                  615 Erie Boulevard West
                  Syracuse, New York 13204
                    BY:  TIMOTHY P. MULVEY, AAG

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*100 S. Clinton Street*
*Syracuse, New York 13260*
*(315)234-8546*

1           (In chambers, 8:55.)

2           THE COURT:  Good morning, Counsel.  I've received

3    three notes from this hard-working jury, which I will mark as

4    Court Exhibits 4, 5 and 6.  They all -- with the exception of

5    the request for a highlighter, which we can accommodate, they

6    all relate to a little confusion regarding the verdict form.

7           The first states:  If number 1 has some answers yes

8    for a few people, when we go to number 2, do we have to put

9    yes or no to all of the people or just the yes answer from

10   question number 1?  And then they state that 7 and 8 are

11   worded differently.

12          I was hard-pressed to find a different wording, but

13   what I intend to say to them, and I'm certainly open to

14   commentary, is to clarify that they only need to answer each

15   of the qualified immunity questions, which is 2, 4, 6 and 8,

16   for any defendant who they mark yes on the corresponding

17   liability question, 1, 3, 5 and 7.  And, hopefully, that will

18   alleviate their question about the difference between 1 and 2

19   versus 7 and 8, which I wasn't able to find, but maybe they

20   can elaborate if that does not satisfy them.

21          The second note is much the same:  7 and 8 are

22   easily worded to answer.  Is 1 and 2 to be answered the same,

23   or leave 2 person blank if you answered no to number 1?  So I

24   think that's just their confusion over whether they have to

25   go through the qualified immunity analysis for every

1    defendant even if they find no liability.  And my response

2    would be no.  And I'm open to any objection to that.

3            MR. SIVIN:  We agree.

4            THE COURT:  The third note begins with:  Can we

5    have a highlighter, please.  I assume you have no objection

6    to sending one in.

7            MR. MILLER:  No.

8            THE COURT:  We sent in a couple different colors.

9            Question number 9, I recognized it was awkward, I

10   tried my best to word it so it was clear.  On question number

11   9 they ask:  Where I say 2, 4, 6 and 8, should it be 2, 4, 6

12   or 8?  My intention was to clarify that.  They only need to

13   provide a damage answer for any defendant on any claim where

14   they find liability and no entitlement to qualified immunity.

15   So I was going to elaborate excessive force, failure to

16   protect under subsection A of 9 relates to questions number

17   1, 2, 3 and 4.  And so for any defendant, Scott Thompson, for

18   example, who's really only implicated on 1, if they find yes

19   for liability and no on qualified immunity, then they would

20   proceed to answer that particular question as to Scott

21   Thompson.

22           And the retaliation, section B, relates to

23   questions number 5 and 6; 5 being the liability, 6 being the

24   qualified immunity.  And I was going to tell them that C

25   relates to 7 and 8, malicious prosecution; again, 7 being the

1   question of liability, 8 being the question of qualified

2   immunity.  Any questions, comments or suggestions?

3          MR. MILLER:  No.

4          MR. MULVEY:  Thanks, Judge.  Only just an

5   observation that we did discuss more separation earlier on

6   and I understand that it's sometimes difficult to keep

7   everyone sorted out.

8          THE COURT:  Did the best I could.

9          MR. MULVEY:  I appreciate that, Your Honor.

10          THE COURT:  All right.  Then why don't we go in and

11   I'll have the jury brought in and I'll explain all this, and

12   if that doesn't clear up their questions, I'm sure that the

13   foreperson can tell me that.

14          MR. MULVEY:  I have one.  I'm not sure of the

15   protocol.  Will you verbally interact with them or will you

16   have to send them in and have them put it in writing again

17   when they come out here?

18          THE COURT:  I will verbally interact on the record.

19          MR. MULVEY:  Okay.

20          (Jury present, 9:00.)

21          THE COURT:  Good morning, ladies and gentlemen.

22   You are a hard-working jury.  Before I finished my first cup

23   of coffee, I had three notes.

24          I have three notes, they're marked Court's Exhibits

25   4, 5 and 6.  I've discussed them with counsel and, hopefully,

1    I can clarify the confusion that I caused by the verdict

2    sheet.  And it was, as you can imagine, it was difficult to

3    put it together and try to do my best to provide you with a

4    road map as to how you address these claims.

5         The first Court Exhibit 4 reads:  If number 1 has

6    some answers yes for a few people, when we go to number 2, do

7    we have to put yes or no to all of the people or just the yes

8    answer from question number 1?  With a nice little smiley

9    face.  And number 7 and 8 are worded different.

10        Note two seems to address the same theme.  It

11    reads:  Number 7 and number 8 are easily worded to answer.

12   Is number 1 and number 2 to be answered the same or to leave

13   number 2 person blank if you answered no to number 1?

14        The third is a different theme, so let me see if I

15   can clarify.  Questions 1, 3, 5 and 7 go to liability on the

16   various claims.  2, 4, 6 and 8 go to qualified immunity.  You

17   are only required to address the issue of qualified immunity

18   in questions 2, 4, 6 and 8 for any defendant that you checked

19   yes on 1, 3, 5 or 7 on the corresponding claims.

20        So, for example, if you found, if you checked yes

21   in response to question number 1 for Scott Thompson, then you

22   should address question number 2 for Scott Thompson.  If you

23   said no in response to question number 1 for Scott Thompson,

24   you would skip him for question number 2 and only answer

25   number 2 for any defendant that you answered yes to question

1    number 1.  So before you address qualified immunity on any

2    claim, you must first find, answer yes to liability for that

3    defendant.  Does that help?

4              JUROR:  Yes.

5              THE COURT:  The other issue relates to damages.

6    Highlighters we provided.  On question number 9:  Should 2,

7    4, 6 and 8 essentially be 2, 4, 6 or 8?  Let me see if I can

8    clarify that one.  You only need to address the question of

9    damages for any defendant on any claim where you have

10   answered yes on liability for that claim and no on qualified

11   immunity.  9A, excessive force, failure to protect, relates

12   to questions 1 and 3 on liability and 2 and 4 on qualified

13   immunity.  I broke it down, as you may recall, because there

14   were two separate incidents, the February 25, 2003 incident,

15   and the March 5 incident involving different defendants.

16             So A, excessive force, failure to protect, let's

17   pick Scott Thompson.  He is only in question 1, he is not in

18   question 3.  Those are the two excessive force questions.  If

19   you checked yes for liability in question number 1 for Scott

20   Thompson and no for qualified immunity in question number 2

21   for Scott Thompson, then you would fill in the damage figure.

22   If you answered no in question number 1 for Scott Thompson or

23   answered yes, then answered yes for qualified immunity, then

24   you would not fill in the damage form.  You had a question.

25             JUROR:  On the 2, 4, 6 and 8, the reason we wanted

1    to know if it was an or is because on 2, 4, 6 and 8, everyone
2    isn't on all four, so they had to be on 2, 4, 6 or 8, not all
3    four.
4         THE COURT:  And that's correct.  And I will
5    acknowledge that that was vague and I wrestled over how I did
6    that.  It was intentional on my part but it was misleading in
7    hindsight because you're only focusing on each damage
8    question, you're only focusing on the questions that relate
9    to that claim.  So, if you found Scott Thompson was entitled
10   to qualified immunity on malicious prosecution but you didn't
11   find he was entitled to qualified immunity on excessive
12   force, then you would still assess him damages on the
13   excessive force claim but not on the malicious prosecution
14   claim.  Does that help?
15        JUROR:  Yes.
16        THE COURT:  Counsel, anything you would like to
17   have me address at sidebar?  Are you satisfied with those
18   responses?
19        MR. MULVEY:  I am.  Thank you, Your Honor.
20        MR. MILLER:  Satisfied.
21        THE COURT:  All right.  Then we'll send you back to
22   doing your good work.  Thank you.
23        (Jury out to continue deliberations at 9:03.)
24        (9:35, jury not present.)
25        THE COURT:  We have a prolific jury with two more

1   notes.  The first correctly points out that in what's to

2   eliminate Mr. Meyers, Mr. Novak and Mr. Sisco from the

3   retaliation claim, something that came very late in the game,

4   I eliminated them from question number 5, but failed to do so

5   in number 6 related to qualified immunity on that claim.

6          I intend, unless you feel otherwise, to tell them

7   that that was pure oversight on my part and that those three

8   defendants who are not named in question number 5 should not

9   have been named in question number 6, that is Meyers, Novak

10  and Sisco.

11         MR. MILLER:  That's correct.

12         MR. MULVEY:  Yes.  I would join a request that they

13  be deleted or the jury be instructed to disregard their names

14  in number 6.

15         THE COURT:  The second asks the following:  Are

16  punitive damages only monetary, and, if so, assessed to whom,

17  defendant or state (or other)?

18         MR. MULVEY:  Well, that concerns me, Your Honor,

19  because your clear instructions are the state is not a party

20  to this action.

21         THE COURT:  Well, let me tell you how I intend to

22  respond.  I intend to respond that as I have charged them,

23  the State of New York is not a party to the action, nor the

24  Department of Correctional Services.  The only parties to the

25  action and the only parties against whom punitive damages can

1    be awarded are the eight defendants in the case, and punitive

2    damages may only be awarded in a monetary amount; they have

3    no power to order any other relief, the Court has no power to

4    order any other relief.

5         MR. MULVEY:  I would request, Your Honor, that you

6    also just very briefly reiterate your instruction that the

7    question before them is not any amount at this point, it's

8    only whether or not they should be imposed.

9         MR. SIVIN:  They haven't asked that.

10        MR. MULVEY:  Well, they asked about amount.

11        THE COURT:  No, they asked if they're only

12   monetary.

13        MR. MULVEY:  Excuse me.  Well, I would still make

14   that request, that it's just that at this juncture if they

15   get to that question, it would only be whether or not they

16   should be imposed.

17        THE COURT:  Does the plaintiff have any questions,

18   comments or concerns regarding my proposed response to the

19   note?

20        MR. MILLER:  No, no comment, questions or

21   objections.

22        THE COURT:  I think based on what I'm hearing, you

23   should give consideration to what the next step will be.  If

24   the answer is yes on punitive damages, in other words,

25   whether you would like to offer any additional proof on the

1    question before I charge them as to how they calculate the

2    amount and send them back.  So you may want to be thinking

3    about that and whether you wish to have any of your clients

4    testify further regarding punitive damages.

5            MR. MULVEY:  If necessary.

6            THE COURT:  If necessary.  Can we bring in the

7    jury, please?

8            (Jury present, 9:45.)

9            THE COURT:  All right, members of the jury, the

10   jury verdict form was a test and you passed the test, you

11   were paying attention.  It is through my oversight late in

12   the game we eliminated defendants Meyers, Novak and Sisco

13   from the retaliation claim, and while I eliminated them from

14   question number 5, the liability question regarding that

15   claim, through my oversight I failed to eliminate them, and

16   therefore obviously confused you further, from the qualified

17   immunity question, which is number 6.  They should not be

18   considered in question number 6 since they are not a part of

19   question number 5.

20           The second note that I received relates to punitive

21   damages, and I've marked these as Court Exhibit 7 and 8.

22   Court Exhibit 8 reads:  Are punitive damages only monetary,

23   and, if so, assessed to whom, defendant, or state, or other?

24           On that issue I have to reiterate something that I

25   said to you during my jury instructions, the State of New

1    York is not a defendant in this case, nor is the Department

2    of Correctional Services.  So in terms of who punitive

3    damages can be assessed against, the response is only the

4    eight defendants in this case, if you see fit to do so, with

5    respect to considering each defendant separately and applying

6    the instruction that I gave you as to punitive damages.  Of

7    course, at this point, as I said before, you're only

8    answering the question of whether punitive damages should be

9    awarded and not the amount.

10            In answer to the second prong of your question, the

11   only power that the Court has in terms of punitive relief is

12   to award punitive damages, so punitive relief is limited to

13   punitive damages, and neither you nor I have the power to

14   enforce any other type of punitive relief in this case

15   against the defendants.  Does that answer your question?

16            JUROR:  Yes.

17            THE COURT:  All right.  Thank you.  Go back and do

18   your good work.

19            (Jury excused to continue deliberations.)

20            (Jury present, 10:30.)

21            THE COURT:  For the record, I have received Court

22   Exhibit Number 9, which is a signed and completed copy of the

23   jury verdict form.  Just so counsel knows, when I initially

24   received this and reviewed it, I determined that there was

25   one question that had not been fully answered, and so I

1    returned it with the court security officer back into the

2    room and I received a message back that they were just

3    testing me.  And so now I have a completed verdict form and

4    I'm going to ask the courtroom deputy, Cathy, if you would

5    hand this to the jury foreperson, Ms. Thompson.

6          In answer to question number 1:  Do you find by a

7    preponderance of the evidence that any of the following

8    defendants, acting under color of state law, violated the

9    constitutional rights of plaintiff Angel Martinez by applying

10   excessive force or by failing to protect him from the use of

11   excessive force based upon the incident which occurred on

12   February 25, 2003?

13         With regard to Scott Thompson?

14         FOREPERSON:  Yes.

15         THE COURT:  With regard to Larry Sisco?

16         FOREPERSON:  Yes.

17         THE COURT:  With respect to Scott Meyers?

18         FOREPERSON:  No.

19         THE COURT:  Thomas Novak?

20         FOREPERSON:  No.

21         THE COURT:  Donna Temple?

22         FOREPERSON:  No.

23         THE COURT:  Question number 2:  For any defendant

24   for whom you answered yes in question number 1, do you find

25   that the defendant has proven by a preponderance of the

1    evidence that a reasonable prison employee in that

2    defendant's position would have believed his or her conduct

3    was lawful in that it did not violate any of plaintiff's

4    clearly established rights?

5            With respect to Scott Thompson?

6            FOREPERSON:  No.

7            THE COURT:  With respect to Larry Sisco?

8            FOREPERSON:  No.

9            THE COURT:  And I assume you did not answer with

10   respect to Meyers, Novak and Temple, since you found no

11   liability on question number 1, is that correct?

12           FOREPERSON:  That is correct.

13           THE COURT:  Question number 3:  Do you find by a

14   preponderance of the evidence that any of the following

15   defendants, acting under color of state law, violated the

16   constitutional rights of plaintiff Angel Martinez by applying

17   excessive force or by failing to protect him from the use of

18   excessive force based upon the incident which occurred on

19   March 5, 2003?

20           With respect to Raymond Sipley?

21           FOREPERSON:  No.

22           THE COURT:  Michael Duvall?

23           FOREPERSON:  Yes.

24           THE COURT:  Raymond LaBrague?

25           FOREPERSON:  Yes.

1          THE COURT:  Roland, I'm sorry.

2          Question number 4:  For any of the defendants for

3   whom you answered yes in question number 2, do you find that

4   the defendant has proven by a preponderance of the evidence

5   that a reasonable prison employee in that defendant's

6   position would have believed his or her conduct was lawful in

7   that it did not violate any of plaintiff's clearly

8   established rights?

9          With respect to Mr. Duvall?

10         FOREPERSON:  No.

11         THE COURT:  With respect to Mr. LaBrague?

12         FOREPERSON:  No.

13         THE COURT:  Question number 5:  Do you find by a

14  preponderance of the evidence that any of the following

15  defendants, acting under color of law, violated the

16  constitutional rights of plaintiff Angel Martinez by

17  retaliating against him for his complaining or threatening to

18  complain regarding prison conditions, including staff

19  misconduct, either by issuing false misbehavior reports to

20  him or by using or permitting the use of excessive force

21  against him?

22         With respect to Scott Thompson?

23         FOREPERSON:  Yes.

24         THE COURT:  Michael Duvall?

25         FOREPERSON:  Yes.

1          THE COURT:  Roland LaBrague?

2          FOREPERSON:  Yes.

3          THE COURT:  Donna Temple?

4          FOREPERSON:  No.

5          THE COURT:  Raymond Sipley?

6          FOREPERSON:  No.

7          THE COURT:  Question number 6:  For any of the

8    defendants for whom you answered yes in question number 5, do

9    you find that the defendant has proven by a preponderance of

10   the evidence that a reasonable prison employee in that

11   defendant's position would have believed his or her conduct

12   was lawful and that it did not violate any of plaintiff's

13   clearly established rights?

14          With regard to Scott Thompson?

15          FOREPERSON:  No.

16          THE COURT:  Michael Duvall?

17          FOREPERSON:  No.

18          THE COURT:  Roland LaBrague?

19          FOREPERSON:  No.

20          THE COURT:  7:  Do you find by a preponderance of

21   the evidence that any of the following defendants, acting

22   under color of state law, subjected the plaintiff to

23   malicious prosecution?

24          Scott Thompson?

25          FOREPERSON:  Yes.

1          THE COURT:  Larry Sisco?

2          FOREPERSON:  Yes.

3          THE COURT:  Scott Meyers?

4          FOREPERSON:  Yes.

5          THE COURT:  Thomas Novak?

6          FOREPERSON:  No.

7          THE COURT:  Number 8:  For any defendant for whom

8   you answered yes in question number 7, do you find that the

9   defendant has proven by a preponderance of the evidence that

10  a reasonable prison employee in that defendant's position

11  would have believed his or her conduct was lawful in that it

12  did not violate any of plaintiff's clearly established

13  rights?

14          Scott Thompson?

15          FOREPERSON:  No.

16          THE COURT:  Larry Sisco?

17          FOREPERSON:  No.

18          THE COURT:  Scott Meyers?

19          FOREPERSON:  No.

20          THE COURT:  Question number 9:  For any defendant

21  for whom you answered yes to questions numbers 1, 3, 5 or 7

22  and no in questions numbers 2, 4, 6 and 8, what amount of

23  actual or nominal damages, if any, do you find were

24  proximately caused by defendant's deprivation of plaintiff's

25  constitutional rights with respect to excessive force and

1   failure to protect?

2           Scott Thompson?

3           FOREPERSON:  $200,000.

4           THE COURT:  Michael Duvall?

5           FOREPERSON:  $100,000.

6           THE COURT:  Roland LaBrague?

7           FOREPERSON:  $50,000.

8           THE COURT:  Larry Sisco?

9           FOREPERSON:  $150,000.

10          THE COURT:  Scott Meyers?

11          FOREPERSON:  Zero.

12          THE COURT:  Thomas Novak?

13          FOREPERSON:  Zero.

14          THE COURT:  Donna Temple?

15          FOREPERSON:  Zero.

16          THE COURT:  And Raymond Sipley?

17          FOREPERSON:  Zero.

18          THE COURT:  Retaliation.  With respect to Scott

19  Thompson?

20          FOREPERSON:  One dollar.

21          THE COURT:  Michael Duvall?

22          FOREPERSON:  One dollar.

23          THE COURT:  Roland LaBrague?

24          FOREPERSON:  One dollar.

25          THE COURT:  And if I recall, you did not find

1    liability with respect to Ms. Temple on that claim and

2    Mr. Sipley.

3             FOREPERSON:  That is correct.

4             THE COURT:  Malicious prosecution.  Scott Thompson?

5             FOREPERSON:  One dollar.

6             THE COURT:  Larry Sisco?

7             FOREPERSON:  One dollar.

8             THE COURT:  Scott Meyers?

9             FOREPERSON:  One dollar.

10            THE COURT:  And you did not find liability with

11   regard to Thomas Novak.

12            FOREPERSON:  That is correct.

13            THE COURT:  Number 10:  Do you find consistent with

14   the Court's instructions that plaintiff is entitled to

15   recover punitive damages against any of the defendants for

16   whom you answered yes on questions numbers 1, 3, 5 or 7 and

17   no on questions numbers 2, 4, 6 or 8, and awarded actual or

18   nominal damages in response to question number 11?

19            Scott Thompson?

20            FOREPERSON:  Yes.

21            THE COURT:  Larry Sisco?

22            FOREPERSON:  Yes.

23            THE COURT:  Scott Meyers?

24            FOREPERSON:  No.

25            THE COURT:  And Novak, you did not award any

1    damages against him.

2              FOREPERSON:  Correct.

3              THE COURT:  And against Donna Temple.

4              FOREPERSON:  Correct.

5              THE COURT:  Michael Duvall?

6              FOREPERSON:  Yes.

7              THE COURT:  Roland LaBrague?

8              FOREPERSON:  Yes.

9              THE COURT:  And you did not award damages against

10   Mr. Sipley.

11             FOREPERSON:  Correct.

12             THE COURT:  And is your verdict unanimous?

13             FOREPERSON:  Yes, it is.

14             THE COURT:  And do all of you agree with that

15   verdict?

16             JURORS:  Yes.

17             THE COURT:  Would either side like to have the jury

18   polled at this time?

19             MR. MILLER:  No.

20             MR. MULVEY:  No.

21             THE COURT:  Members of the jury, while it appears

22   that our work is not yet complete, there is an additional

23   component, the calculation of punitive damages.  I'm going to

24   ask you to retire briefly to the jury room while I have a

25   conversation with counsel concerning how they would like to

1   proceed.  The courtroom deputy will take your jury verdict

2   form back.  We'll try to make this as brief as we can, but it

3   will depend on whether the parties wish to present any

4   further evidence before I give you further instructions

5   regarding punitive damages and how they should be calculated.

6   Thank you.

7           (Jury excused, 10:40.)

8           THE COURT:  Mr. Miller, does the plaintiff intend

9   to offer any additional proof regarding punitive damages?

10          MR. MILLER:  May I just speak to my client for less

11  than three minutes about that?

12          THE COURT:  Yes.  Mr. Mulvey, do you need time to

13  speak to your clients?

14          MR. MULVEY:  I would request an opportunity, once I

15  hear whether the plaintiff is going to put in any proof or

16  not, yes, Your Honor.  Why don't we recess, Judge, if we may?

17          THE COURT:  I'll give you ten minutes.

18          MR. MULVEY:  Thank you.

19          (Recess at 10:45.)

20          (Reconvene at 11:00.)

21          THE COURT:  It's my understanding that neither side

22  would like to offer any proof on the issue of punitive

23  damages.  Is that correct, Mr. Miller?

24          MR. MILLER:  Yes, it is.

25          THE COURT:  Mr. Mulvey?

1          MR. MULVEY:  Yes, it is.

2          THE COURT:  Bring in the jury.

3          MR. MILLER:  Would we have an opportunity to give a

4   summation?

5          THE COURT:  No.

6          MR. MILLER:  I thought I would have an opportunity

7   to sum up.  I think I would prefer to offer evidence.

8          THE COURT:  Hold the jury, please.  And if you were

9   intending to put Mr. Martinez on the stand, my answer would

10   be that I don't believe that he could offer anything further

11   relevant to the question of punitive damages, but I would

12   permit the defendants to deduce evidence concerning their

13   financial circumstances.  But I would allow you to make an

14   offer of proof as to what additional evidence you would offer

15   on the question of punitive damages that is already not

16   before this jury.

17          MR. MILLER:  Your Honor, we do not intend to

18   present any proof.  However, being that defendants are not

19   offering proof either, I'd ask that you modify your charge

20   with respect to items that are not before them, such as

21   financial position, and I would ask that you add one further

22   sentence stating they have not offered any proof at all as to

23   what their financial situation is and so, therefore, you

24   should not speculate.

25          THE COURT:  Mr. Mulvey?

1          MR. MULVEY:  Your Honor, I think that in fairness

2    to the defendants, that the jury should be allowed to

3    consider whatever general knowledge they may have about what

4    they believe a corrections officer's relative financial

5    position would be, absent any suggestion that they're

6    independently wealthy or have assets that would be

7    uncharacteristically high as someone who works as an officer,

8    a corrections officer.  I think that that is a question that

9    they can at least use their common sense to rely upon in

10   assessing punitive damages.  As opposed to a multi-million

11   dollar corporation with multi-million dollar assets or some

12   other type of defendant.  They should be able to think about

13   the impact on these types of individuals, given their line of

14   work and the relative range of their salary and the likely

15   assets that somebody earning that type of salary would have.

16         MR. MILLER:  I believe Mr. Mulvey is asking you in

17   a way to testify on their behalf.  I don't think that you

18   should in any way make assumptions about their assets and

19   their financial station at this point.  If they want the jury

20   to know that they're making the average salary of a

21   corrections officer or whatever, then they can testify.  For

22   all I know, one of them has a million dollars in the bank;

23   there is no way of knowing at this point.

24         MR. MULVEY:  I didn't suggest anything other than

25   preserving the charge.  I'm not suggesting that the Judge go

1  beyond what he has in the charge, that's all I'm saying.

2  THE COURT:  I've considered the arguments of

3  counsel, and the requests and objections noted to my

4  supplemental jury instructions, which I am marking as Court

5  Exhibit 10, are rejected and I am going to charge exactly as

6  I have contemplated.  And I think it's dangerous for me to go

7  any further and instruct the jury as to how I think that they

8  should weigh these various factors.  Would you kindly bring

9  in the jury?

10  (Jury present.)

11  THE COURT:  I have more paper for you.  Members of

12  the jury, I am now going to provide you with some

13  supplemental instructions concerning the calculation of

14  punitive damages.  I have not prepared a verdict sheet

15  because I did so poorly the first time around, because I

16  think that you ought to be able to on a piece of paper that

17  will be provided give us the amounts for each of the four

18  defendants that you found responsible for punitive damages.

19  Let me give you a few words about calculating your

20  award.  Now that you have determined that plaintiff Angel

21  Martinez is entitled to recover punitive damages for

22  violation of his constitutional rights, you must next

23  determine the amount of punitive damages to award.  In

24  arriving at your decision as to the amount of punitive

25  damages, you should consider the following factors:

1              One, the nature and reprehensibility of what the

2    particular defendant did.  At that would include the

3    character of the wrongdoing, whether defendant's conduct

4    demonstrated an indifference to, or a reckless disregard of,

5    the health or safety of others, whether plaintiff was

6    vulnerable, how long the conduct went on, the defendant's

7    awareness of the harm the conduct caused or was likely to

8    cause, any concealment or covering up of the wrongdoing, and

9    whether, and if so how often, defendant had committed similar

10   acts of this type in the past.  In considering the amount of

11   punitive damages to award, you should weigh this factor

12   heavily.

13             Two, the actual and potential harm created by

14   defendant's conduct.  The amount of punitive damages that you

15   award must be both reasonable and proportionate to the actual

16   and potential harm suffered by the plaintiff Angel Martinez,

17   and to the compensatory damages you awarded to him.

18             And thirdly, defendants' financial condition and

19   the impact the punitive damages will have on the defendant.

20             With that guidance, I'm going to ask you to retire

21   and resume your deliberations.

22             (Jury excused to continue deliberations at 11:10.)

23             THE COURT:  Counsel, other than what has already

24   been placed on the record, are there any objections or

25   exceptions to the charge or requests to charge at this time?

1    Mr. Miller?

2            MR. MILLER:  No.

3            THE COURT:  Mr. Mulvey?

4            MR. MULVEY:  No.  Thank you.

5            THE COURT:  All right.  Thank you.

6            (Recess at 11:10.)

7            (In chambers, 11:35.)

8            THE COURT:  Counsel, in addition to a verdict,

9    which I will take when we complete these proceedings, I have

10   an additional note, which is Court Exhibit 11.  I'll read it

11   and then I will tell you that because it is a note from the

12   jury, I've marked it, it is a matter of public record.  I see

13   no point in, however, in reading it in open court, and I

14   think it will just unduly inflame the situation, but I wanted

15   to share it with you.  "Your Honor, we the jury feel there

16   should be consideration of the defendants possibly be brought

17   in front of the Grand Jury for possible criminal charges.  We

18   know that this is not our job but we feel strong on this and

19   wanted to let you know.  You'll probably throw this out but

20   we wanted to write it anyway.  Thank you."

21           As I indicated, this has been marked as an exhibit,

22   it will be a matter of public record, but unless you feel

23   differently and convince me as to why, I do not intend to

24   take any further action with regard to this note and I do not

25   intend to read it in open court before the defendants.

1    Mr. Miller?

2         MR. MILLER:  I don't know.  Let me just tell you

3    why I'm thinking so hard and then I'll try to formulate an

4    answer.  Practically speaking, I understand why you would not

5    want to read that in court.  On the other hand, considering

6    what Angel Martinez has been through, and I think it's clear

7    to Your Honor that he's litigated this case for more reasons

8    than just monetary compensation, I think that that note may

9    be more important to him as a party to the action than

10   anything else that's happened this week.  So, in fairness to

11   him and for no legal reason that it shouldn't be read, I

12   would ask that it be read, and I think that it might in some

13   different way benefit the defendants.

14        THE COURT:  If I read this note in open court,

15   would he consider withdrawing his claim for punitive damages?

16        MR. MILLER:  No.

17        THE COURT:  Mr. Mulvey, what's your position?

18        MR. MULVEY:  I believe that there is no authority

19   or jurisdiction for that communication to be conveyed to the

20   parties.

21        THE COURT:  There is or is not?

22        MR. MULVEY:  There is not.

23        THE COURT:  I conveyed it to the parties.

24        MR. MULVEY:  Let me elaborate; convey it to the

25   parties in open Court, Your Honor.  And, obviously, the

1  defendants are distraught.  I just think it's not

2  intentionally inflammatory but it creates an atmosphere that

3  would be unnecessarily confrontational.

4        THE COURT:  Let me just go on the record as saying,

5  additionally, I sense, and this is confirmed by some

6  conversations I have had with court security officers, that

7  the temperature in the courtroom is particularly high and

8  there is some tension, and I have no desire or interest in

9  fueling that fire, so I will not read it in open Court.

10        MR. MILLER:  Can I make a suggestion as a

11  compromise?

12        THE COURT:  Yes.

13        MR. MILLER:  Can we have Mr. Martinez come back

14  into chambers and have Your Honor read it to him outside the

15  presence of the defendants?

16        THE COURT:  No.  This is a matter of public record,

17  you will be entitled to receive a copy of it.  I will have a

18  copy made, if you would like, for both of you, and you can

19  share it with your client.

20        MR. MILLER:  Okay.

21        THE COURT:  All right.  Let's go in and take a

22  verdict.

23        (Jury present, 11:42.)

24        THE COURT:  Madam foreperson, has the jury reached

25  a verdict with regard to the question of punitive damages?

1    FOREPERSON:  Yes, Your Honor, we have.

2    THE COURT:  You have your own little cheat sheet.

3  I have marked as Court Exhibit 12 the actual note that you

4  sent which contains these figures, it is my understanding.

5    With regard to Scott Thompson, what amount of

6  punitive damages do you award?

7    FOREPERSON:  $500,000.

8    THE COURT:  With regard to Larry Sisco?

9    FOREPERSON:  $150,000.

10    THE COURT:  With regard to Michael Duvall?

11    FOREPERSON:  $200,000.

12    THE COURT:  And with regard to Roland LaBrague?

13    FOREPERSON:  $50,000.

14    THE COURT:  And is that verdict unanimous?

15    FOREPERSON:  Yes, sir, it is.

16    THE COURT:  Do you all agree?

17    JURORS:  Yes.

18    THE COURT:  Would either of you like the jury

19  polled?

20    MR. MILLER:  No, Your Honor.

21    MR. MULVEY:  No, thank you.

22    THE COURT:  Members of the jury, let me express the

23  thanks of the Court for your service, and I'm sure that I

24  echo the sentiments of counsel and the parties.  You are the

25  most important part of your justice system.  Your jury system

1   is why this is the best system of justice in the land, in

2   fact, in the world.

3           I'm going to ask if you will retire to the jury

4   room.  I understand lunch is being delivered.  I would like

5   to speak to you and express my thanks personally.  You have

6   the option of remaining after that and speaking with counsel,

7   if you wish.  If not, you can leave.  Counsel will be told

8   that although they may thereafter contact you, you have no

9   obligation to speak with them.  Again, thank you for your

10  service and I'll ask you to retire at this time.

11          (Jury excused.)

12          THE COURT:  Counsel, I will enter judgment today on

13  the jury's verdict.  I have accepted the jury's verdict on

14  the qualified immunity questions 2, 4, 6 and 8, which was

15  deemed to be advisory.  I have accepted it as the verdict of

16  Court.  I will enter judgment and you will have ten business

17  days from today's date to file any appropriate post-trial

18  motions under Rules 50 and 59 of the Federal Rules of Civil

19  Procedure.

20          Are there any additional matters?  I should say on

21  the record in open court that I received an additional note

22  from the jury.  Both counsel will be provided with a copy of

23  the note.  It has been marked as Court Exhibit 11 and it is a

24  matter of public record.

25          Is there anything further from the plaintiff at

1    this time?

2         MR. MILLER:  The only thing I would request of Your

3    Honor is when you do speak to them, if you would, my client

4    has made a request to personally thank them and I'd like that

5    you let them know that he wishes to make that thanks to them,

6    and if they say no, then fine, but if they say yes, he would

7    like to personally speak to them.

8         THE COURT:  I will indicate that but I will tell

9    them that it is completely their choice whether they choose

10   to stay or leave.

11        MR. SIVIN:  Your Honor, if I may?

12        THE COURT:  Mr. Sivin.

13        MR. SIVIN:  I don't recall what the time

14   requirements are with respect to bill of cost and any fee

15   applications.  We're starting a trial Monday, it's just the

16   two of us.  If I could ask for 45 days in order to make

17   motions with respect to 1988 and the Prison Litigation Reform

18   Act regarding fees and to submit a bill of costs?

19        THE COURT:  I will grant you thirty days from the

20   date of entry of judgment, which should be today, to make any

21   fee applications.  I think the post-trial motion deadline is

22   jurisdictional, however, and I can't extend that, nor I did

23   understand your request to include post-trial motions.

24        MR. SIVIN:  That's for submission of bill of costs,

25   I don't recall when I'm required to make that.

1          THE COURT:  I think that 54(d) requires both to be

2     provided within fourteen days, and I have extended both to

3     thirty days from today, bill of costs and fee application.

4          Mr. Mulvey, anything further?

5          MR. MULVEY:  No.  Thank you, Judge.

6          THE COURT:  All right.  I thank the lawyers for

7     your excellent presentations.

8          (Court adjourned at 11:47.)

9                    *          *          *

10

11          C E R T I F I C A T I O N

12

13

14          I, EILEEN MCDONOUGH, RPR, CRR, Official Court

15     Reporter in and for the United States District Court,

16     Northern District of New York, DO HEREBY CERTIFY that I

17     attended the foregoing proceedings, took stenographic notes

18     of the same, and that the foregoing is a true and correct

19     transcript thereof.

20

21

22

23

24

25

_____

EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter