IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANGEL L. MARTINEZ,

                         Plaintiff,

                                              Civil Action No.
                                              9:04-CV-0440 (DEP)

        vs.

SCOTT THOMPSON, *et al.,*

                         Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

SIVIN, MILLER LAW FIRM                    EDWARD SIVIN, ESQ._
170 Broadway                             GLENN D.  MILLER, ESQ.
Suite 600
New York, NY 10038

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                      TIMOTHY P. MULVEY, ESQ.
Office of the Attorney General           SENTA B. SIUDA, ESQ.
State of New York                        Assistant Attorneys General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

        Plaintiff Angel Martinez, a former New York State prison inmate,

commenced this action against several employees of the New York State

Department of Correctional Services (the "DOCS") pursuant to 42 U.S.C.

§ 1983, alleging deprivation of his civil rights.  Included among the claims

asserted by Martinez were causes of action alleging 1) the use of

excessive force and the failure to protect him from harm, based upon two

separate incidents occurring on February 25, 2003 and March 5, 2003; 2)

unlawful retaliation, arising both from the use of force on March 5, 2003

and the issuance of a misbehavior report charging him with violating

prison policies, both occurring after he threatened to complain regarding

the February 25, 2003 incident; 3) deprivation of procedural due process,

based upon a disciplinary hearing conducted to address the charges set

forth in the misbehavior report; and 4) malicious prosecution, stemming

from the pursuit of criminal charges against him arising out of the

February 25, 2003 incident.  Plaintiff's complaint, as later amended,

sought various relief, including awards of compensatory and punitive

damages.

  A jury trial was held in the matter, beginning on September 8, 2008.

After the close of evidence plaintiff's claims for excessive force, failure to

protect, unlawful retaliation, and malicious prosecution were submitted to

the jury for determination, the court having dismissed plaintiff's procedural due process cause of action as a matter of law during the course of the trial. Following its deliberations the jury, utilizing a form prepared for its use, returned a verdict finding in the plaintiff's favor on each of the four claims against some, though not all, of the defendants under consideration with respect to each of those causes of action. While only nominal damages were conferred in connection with plaintiff's retaliation and malicious prosecution claims, in light of the court's instructions limiting damages on those claims based upon the fact that plaintiff suffered no physical injury as a result of the occurrences, the jury awarded significant amounts of compensatory and punitive damages against the defendants found accountable for the use of excessive force and the failure to protect him from harm, resulting in the entry of judgment in plaintiff's favor in a total cumulative amount of $1,400,006.

Currently pending before the court are cross-motions filed by the parties. In their motion, defendants seek an order granting them judgment as a matter of law, notwithstanding the jury's verdict or, alternatively, a new trial. Plaintiff has countered with a request for an award of costs and attorneys' fees, pursuant to 42 U.S.C. § 1988. Because the jury's finding

of liability and compensatory damage awards are well supported by the evidence adduced during the trial, and the plaintiff, as a prevailing party, is entitled to an award of costs and attorneys' fees, I will grant plaintiff's motion and deny defendants' motion for judgment as a matter of law. Based upon my finding that the jury's punitive damage awards are shockingly excessive, however, I will grant defendants' motion for a new trial unless the plaintiff agrees to remit a portion of the punitive damages awarded by the jury, as described below.

I.    <u>BACKGROUND</u>

At the times relevant to his claims Martinez, a self-described former heroin addict, was a prison inmate entrusted to the care and custody of the DOCS, and was designated by that agency to the Oneida Correctional Facility ("Oneida"), located in Rome, New York.  On February 25, 2003, after returning to his assigned dormitory at Oneida from an outside medical appointment, plaintiff became embroiled in a physical altercation, initially only with defendant Scott Thompson, a corrections officer at the facility, but subsequently involving other corrections workers who appeared at the scene to offer assistance, including defendants Larry Sisco, Scott Myers, Thomas Novak, and Donna Temple.  Plaintiff was

ultimately placed in mechanical restraints and taken to the facility's medical unit, where photographs were taken and he received some treatment for injuries suffered during the course of the incident. Following treatment, plaintiff was escorted to the facility's special housing unit ("SHU").

Corrections Officer Thompson issued an inmate misbehavior report to the plaintiff on the day after the incident, charging him with refusal to obey a direct order, assault on staff, engaging in violent conduct, and creating a disturbance, in violation of established prison rules. A disciplinary hearing was conducted to address the charges, beginning on February 28, 2003 and continuing on March 14, 2003, with defendant Lane, a corrections captain, presiding as the hearing officer. At the conclusion of the hearing, Captain Lane found the plaintiff guilty of all violations alleged and imposed a penalty principally consisting of twenty-four months of disciplinary SHU confinement, with a corresponding loss of various other privileges.[1]

A second altercation involving the plaintiff and corrections workers

---

[1] The penalty was later reduced, on appeal to Assistant DOCS Commissioner Selsky, to twelve months of SHU confinement based upon a finding that "the nature of the incident does not warrant penalty imposed", and eventually was reversed altogether, on agreement of the parties.

occurred on March 5, 2003 in the Oneida SHU.  On that occasion, plaintiff

was assaulted without provocation by defendants Michael Duvall and

Roland LaBrague, two corrections officers, while being returned to his cell

after being permitted to inspect his personal property at a nearby location.

According to Martinez, Raymond Sipley arrived on the scene shortly after

the onset of the incident and either participated in the assault or failed to

protect him from the actions of his co-workers.

On April 24, 2003, plaintiff was criminally charged in Oneida County

with three counts of assault in the second degree, based upon the

February 25, 2003 incident.  Cooperating in the investigation which led to

that prosecution were defendants Scott Thompson, Larry Sisco, Scott

Myers, and Thomas Novak, each of whom provided a supporting

deposition regarding the incident for use by law enforcement officers.  In

their statements defendants Thomson, Sisco, and Myers indicated a

desire to have plaintiff criminally prosecuted for his conduct; the

supporting deposition of defendant Novak, which was prepared on a

different form than the others, did not contain such a statement.  Upon

presentment of the matter to an Oneida County grand jury a "no bill" was

returned, and all criminal charges against the plaintiff arising out of the

incident were ultimately dismissed.

On December 1, 2006, plaintiff was released from prison. Martinez is now married, and resides in Brooklyn, New York.  While a broken rib suffered as a result of the relevant events has healed, Martinez has suffered from lingering pain as a result of the lumbar back condition which he attributes to the two beatings.  In addition, plaintiff has been diagnosed as suffering from post-traumatic stress disorder ("PTSD") and has experienced ongoing symptomology which has included repeated thoughts of suicide, recurrent nightmares and flashbacks of the assaults, fear of the presence of law enforcement officials, and other signs of anxiety. The severity of these symptoms has required the plaintiff to obtain ongoing treatment, including from Christine Janick, a licensed clinical social worker employed at the Bellevue Hospital, located in New York City, who specializes in the treatment of victims of crimes and domestic violence.  At trial Janick, who has treated Martinez virtually on a weekly basis since August of 2007, convincingly testified that despite the passage of five and one-half years since the relevant events, plaintiff experiences significant ongoing effects including sleeplessness, recurring nightmares, panic attacks, trauma, fear of being on the street, and depression, and

that he has been tearful throughout the entire therapeutic process.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 19, 2004, naming as defendants ten DOCS employees by name, and several others identified only as "Doe" defendants.  Dkt. No. 1.  Following the joinder of issue, pretrial discovery, the granting of a motion filed by the defendants seeking partial summary judgment, and the filing of an amended complaint, with court leave, to add a claim for punitive damages, the matter was the subject of a jury trial over which I presided, commencing on September 8, 2008.[2]

On September 12, 2008, the jury returned a verdict on the remaining claims in the action.[3]  In its verdict, the jury found 1) defendants Thompson and Sisco liable with respect to the February 25, 2003 incident, exonerating defendant Myers, Novak, and Temple in connection with plaintiff's excessive force and failure to protect claim arising from that occurrence; 2) defendants Duvall and LaBrague liable with respect to the

---

[2]     This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c).  *See* Dkt. No. 149.

[3]     During the course of trial, I granted a motion by defendants for judgment as a matter of law dismissing plaintiff's procedural due process cause of action pursuant to Rule 50 of the Federal Rules of Civil Procedure.

March 5, 2003 incident, clearing defendant Sipley in connection with

plaintiff's claim against him stemming from that event; 3) in plaintiff's favor

and against defendants Thompson, Duvall, and LaBrague, but not

defendants Temple and Sipley, with regard to plaintiff's retaliation cause

of action; and 4) against defendants Thompson, Sisco, and Myers, but not

defendant Novak, in connection with plaintiff's malicious prosecution

count.  In its verdict the jury also declined to find that any of the

defendants found liable on plaintiff's various substantive claims should

nonetheless be entitled to qualified immunity from suit, a finding in which

the court joins.[4]

The portion of the jury's verdict concerning damages was diverse.

Following the court's instructions regarding the unavailability of

compensatory damages for mental anguish and emotional distress in

connection with plaintiff's retaliation and malicious prosecution claims,

based upon 42 U.S.C. § 1997e(e), the jury awarded Martinez only nominal

damages on those claims.  With respect to plaintiff's excessive force and

failure to protect causes of action, however, the jury awarded

---

[4]      Entitlement to qualified immunity from suit implicates a question of law, for resolution by the court.  *Stephenson v. Doe*, 332 F.3d 68, 80-81 (2d Cir. 2003).  In resolving the issue, however, a trial court can properly be guided by answers to special interrogatories.  *Id.* at 81.

compensatory damages in the amount of $200,000 against defendant Thompson, $150,000 against defendant Sisco, $100,000 against defendant Duvall, and $50,000 against defendant LaBrague.  In addition, the jury determined that awards of punitive damages in connection with plaintiff's excessive force and failure to protect claims were appropriate, granting plaintiff an additional $500,000 against defendant Thompson, $200,000 against defendant Duvall, $150,000 against defendant Sisco, and $50,000 against defendant LaBrague.  Judgment was entered based upon the jury's verdict on September 12, 2008.  Dkt. No. 172.

On September 26, 2008, defendants moved for judgment as a matter of law dismissing plaintiff's claims or, in the alternative, for a new trial, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, respectively.  Dkt. No. 173.  Plaintiff has since countered, opposing defendants' motion and requesting an award of costs and attorneys' fees. Dkt. No. 180.  With the receipt of papers on behalf of the defendants in opposition to plaintiff's motion for attorneys' fees on October 27, 2008, Dkt. No. 183, and the filing of a reply declaration and memorandum of law on behalf of plaintiff in further support of his motion on October 29, 2008, Dkt. Nos. 184, 185, briefing is complete, and the parties' post-trial motions

are now ripe for determination.

III.    DISCUSSION

    A.    Defendants' Post-Trial Motions

        1.    Governing Standards of Review

The standards which govern motions for judgment as a matter of law

("JMOL") and for a new trial, while not entirely dissimilar, are distinctly

different.  Despite their differences, however, both are tempered by Rule

61 of the Federal Rules of Civil Procedure, which provides that

> [u]nless justice requires otherwise, no error in
> admitting or excluding evidence – or any other
> error by the court or a party – is ground for granting
> a new trial, for setting aside a verdict, or for
> vacating, modifying, or otherwise disturbing a
> judgment or order.  At every stage of the
> proceeding, the court must disregard all errors and
> defects that do not affect any party's substantial
> rights.

Fed. R. Civ. P. 61; *McDonough Power Equip., Inc. v. Greenwood*, 464

U.S. 548, 553-54, 104 S. Ct. 845, 848-49 (1984); 11 Charles Alan Wright,

*et al.*, Federal Practice & Procedure § 2882 (2d ed. 1995).

        a)    JMOL

Motions seeking JMOL, following a jury trial, are governed by Rule

50(b) of the Federal Rules of Civil Procedure.  That rule provides, in

11

relevant part, that

> [i]f the court does not grant a motion for judgment
> as a matter of law made under Rule 50(a), the
> court is considered to have submitted the action to
> the jury subject to the court's later deciding the
> legal questions raised by the motion.  No later than
> 10 days after the entry of judgment – or if the
> motion addresses a jury issue not decided by a
> verdict, no later than 10 days after the jury was
> discharged – the movant may file a renewed
> motion or judgment as a matter of law and may
> include an alternative or joint request for a new trial
> under Rule 59.

Fed. R. Civ. P. 50(b).  The rule goes on to provide that in ruling upon such

a motion following the return of a jury verdict, a court may allow the

judgment to stand, order a new trial, or direct the entry of judgment as a

matter of law notwithstanding that a verdict was returned against the

moving party.  *Id.*; 9B Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 2538 (2d ed. 1995).

The burden which a litigant faces when seeking JMOL in the face of

an adverse jury verdict, while not insurmountable, is substantial.  JMOL

notwithstanding a contrary jury verdict is appropriately entered only when

the evidence, viewed in the light most favorable to the non-moving party,

is susceptible of supporting only one possible verdict, in favor of the

moving party.  *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 (2d Cir.

12

1991) (citations omitted); *Chang v. City of Albany*, 150 F.R.D. 456, 459

(N.D.N.Y. 1993) (McAvoy, C.J.) (citing, *inter alia*, *Jund*).  The granting of

such relief is warranted when

> (1) there is such a complete absence of evidence
> supporting the verdict that the jury's findings could
> only have been the result of sheer surmise and
> conjecture, or (2) there is such an overwhelming
> amount of evidence in favor of the movant that
> reasonable and fair minded men could not arrive at
> a verdict against him.

*Jund*, 941 F.2d at 1290 (quoting, *inter alia*, *Mattivi v. South African Marine

Corp.*, 618 F.2d 163, 168 (2d Cir. 1980)); *see also Nimely v. City of New

York*, 414 F.3d 381, 390 (2d Cir. 2005).  In deciding a motion for JMOL,

the court must draw all reasonable inferences in favor of the non-moving

party and may not make credibility determinations or weigh the evidence,

as those functions properly fall within the jury's province.  *Mickle v. Morin*,

297 F.3d 114, 120 (2d Cir. 2002) (citations omitted); 9B Wright & Miller,

Federal Practice & Procedure § 2527; *see also Jund*, 941 F.2d at 1290.

    b)    New Trial

        Post-trial motions seeking a new trial are governed by Rule 59 of the

Federal Rules of Civil Procedure.  That rule provides, in pertinent part,

that

13

> [t]he court may, on motion, grant a new trial on all
> or some of the issues – and to any party – . . . after
> a jury trial, for any reason for which a new trial has
> heretofore been granted in an action at law in
> federal court[.]

Fed. R. Civ. P. 59(a)(1)(A).   Applying this standard, the Second Circuit

has cautioned that ordering a new trial is justified only when the court is

convinced that the jury has reached a "seriously erroneous result" or that

the verdict represents a "miscarriage of justice."  *Nimely*, 414 F.3d at 392

(quotations and citations omitted); *see also Kosmynka v. Polaris Indus.,*

*Inc.,* 462 F.3d 74, 82 (2d Cir. 2006); *Sorlucco v. New York City Police*

*Dept.*, 971 F.2d 864, 875 (2d Cir. 1992); *see also DLC Mgmt. Corp. v.*

*Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998); *Atkins v. New York*

*City*, 143 F.3d 100, 102 (2d Cir. 1998) (citation omitted); 11 Wright, *et al.*,

Federal Practice & Procedure § 2805.

        Unlike a motion for JMOL under Rule 50(b), when addressing a new

trial motion a court is permitted to weigh the evidence presented at trial,

and is not necessarily bound to view it in a light most favorable to the non-

moving party.  *DLC Mgmt. Corp.*, 163 F.3d at 133-34 (citation omitted).  A

jury's credibility determinations, however, are entitled to great deference,

and mere disagreement by the court with a jury's verdict, without more,

14

does not entitle a party to relief under Rule 59.  *Meiselman v. Byrom*, 207 F. Supp. 2d 40, 42 (E.D.N.Y. 2002) (citing, *inter alia*, *United States v. Landau*, 155 F.3d 93, 105 (2d Cir. 1998)).  A court should generally be indisposed to disturb a jury's verdict on a Rule 59 motion unless the verdict is considered to have been "'egregious.'"  *Id.* (quoting, *inter alia*, *DLC Mgmt. Corp.*, 163 F.3d at 134).

### 2.     Defendants' Motion

In their motion, defendants set forth four separate grounds for the entry of JMOL or, alternatively, for a new trial.

#### a)     Jury Verdict Inconsistency

The first argument offered in support of defendants' post-trial motion centers upon what they perceive to be inconsistencies in the jury's verdict. Focusing principally on the February 25, 2003 incident, defendants argue that while plaintiff testified that all five of the DOCS workers accused in connection with that incident, including defendants Thompson, Sisco, Myers, Novak, and Temple, were present during all or at least a portion of the incident and either actively participated in the assault or, having an opportunity to do so, failed to intervene and protect him from the assault, the jury verdict found only defendants Thompson and Sisco accountable

for that beating.[5]  Dkt. No. 173 at p. 2.  Defendants claim this discrepancy

creates an irreconcilable inconsistency in the jury's verdict.

When confronted with an argument by the losing party that a jury's

verdict is internally inconsistent, the trial court is tasked with determining

whether the verdict can be rationally reconciled, "adopt[ing] a view of the

case, if there is one, that resolves any seeming inconsistency."  *Auwood*

*v. Harry Brandt Booking Office*, *Inc.,* 850 F.2d 884, 891 (2d Cir. 1988)

(citation omitted).  When attempting to harmonize allegedly inconsistent

verdicts a court must "bear in mind that the jury was entitled to believe

some parts and disbelieve other parts of the testimony of any given

witness." *Tolbert  v. Queens College,* 242 F.3d 58, 74 (2d Cir. 2001)*; see*

*also Fiacco v. City of Rensselaer,* 783 F.2d 319, 325 (2d Cir. 1986).  If,

after engaging in this exercise, the court is left with a firm conviction that

the answers of the jury are "ineluctably inconsistent", then it may set aside

the verdict and order a new trial.  *Id.* at 74 (citations omitted); *see also*

*Brooks v. Brattleboro Memorial Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992)

---

[5]        The portion of defendants' memorandum asserting jury verdict inconsistency addresses only the February 25, 2003 incident.  In their counsel's supporting affidavit, however, defendants also appear to argue fatal inconsistency with regard to the March 5, 2003 assault, and in connection with plaintiff's malicious prosecution claim.

(citations omitted).

In this instance, the jury's verdict can be readily reconciled with the evidence presented at trial.  Each of the five defendants accused of having violated plaintiff's constitutional rights had varying degrees of involvement in the underlying incident.  At the onset, the February 25, 2003 confrontation involved only the plaintiff and Corrections Officer Thompson, with Corrections Officer Sisco arriving shortly on the scene and actively assisting Thompson to subdue the plaintiff.  The remaining three defendants, including Corrections Officers Myers and Novak and Corrections Sergeant Temple, arrived a short time later and, the jury could well have found, after the beating had ended.  In short, despite defendants' arguments to the contrary, the jury's verdict not only is not inconsistent, but in fact could be viewed as extremely discriminating, evincing careful consideration by the jury of the events precipitating plaintiff's claims and the distinct roles played by the defendants involved.

Similarly, with respect to the March 5, 2003 incident, the jury's verdict reflects its apparent belief that defendants Duvall and LaBrague, who together escorted plaintiff back to his SHU cell following an inspection of his property, participated in the use of excessive force on that occasion,

17

and that by the time defendant Sipley arrived, the use of force had effectively ended and thus he lacked the opportunity to intervene and protect the plaintiff from harm, thereby crediting Sipley's trial testimony to that effect.  This distinction between Duvall and LaBrague on the one hand, and Sipley on the other, is well supported by the evidence adduced at trial.

The basis for the portion of the jury's verdict regarding malicious prosecution, and its distinction between defendant Novak, who was exonerated, and the remaining three defendants found liable on that claim, is similarly apparent from the evidence.   While each of the four gave a supporting deposition regarding the February 25, 2003 incident, only defendants Thompson, Sisco, and Meyers included within them a statement that they wished to have plaintiff prosecuted, while defendant Novak did not.  This variance provided a proper basis to find against Thompson, Sisco, and Meyers on that cause of action, but in Novak's favor on the claim.

In short, the jury's verdict is neither inconsistent, nor does it lack the support of evidence in the record, considered in a light most favorable to the plaintiff.

b)      Testimony Regarding Plaintiff's Diagnoses of PTSD

In their motion, defendants assign error to the fact that Christine Janick, a licensed clinical social worker, was permitted to refer to plaintiff's PTSD diagnosis during testimony regarding her treatment of Martinez.  At best, this argument implicates an evidentiary ruling which generally will not result in casting aside a jury's verdict, absent extenuating circumstances. *See* Fed. R. Civ. P. 61 (errors in admitting or excluding evidence are not grounds for granting a new trial or setting aside a verdict unless they affect a party's "substantial rights"); *Parker v. Reda*, 327 F.3d 211, 213 (2d Cir. 2003) (quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997)) ("This Court will order a new trial only if the inadmissible evidence was 'a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that we are convinced that the jury has reached a seriously erroneous result of that the verdict is a miscarriage of justice.'") (quotations omitted); *see also Bank of China v. NBM LLC*, 359 F.3d 171, 182-83 (2d Cir. 2004) (erroneous rulings regarding the admission of expert testimony, like other erroneous evidentiary rulings, are reviewed under the "harmless error" standard); *Hygh v. Jacobs*, 961 F.2d 359, 364-65 (2d Cir. 1992) (same).  In any event, the PTSD diagnosis is squarely

reflected in medical records, including those from the Bronx-Lebanon Hospital Center, which were received in evidence at trial, and did not depend upon the testimony of Ms. Janick, who in fact was expressly precluded by the court from offering a diagnosis of the plaintiff's condition. This, then, provides no basis to set aside the jury's verdict or grant a new trial. *Cf. U.S. v. Garcia*, 413 F.3d 201, 217-18 (2d Cir. 2005) (erroneous admission of opinion testimony was harmless error where, *inter alia*, the testimony was cumulative of other properly admitted evidence).

c)    <u>Excessive Verdict</u>

Defendants next argue that the jury's awards of compensatory and punitive damages are excessive.  Citing cases which are significantly inapposite, for the most part involving garden variety claims for mental anguish and emotional distress based wholly or principally upon the testimony of the claimant concerning his or her symptomology, defendants urge setting aside of the verdict altogether or reduction of the awards rendered, although no appropriate amounts are proposed.

The amount of damages, including punitive damages, to be awarded in a particular case falls within the province of the jury.  *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir. 1990).  While undeniably subject to oversight

by both the trial and appellate courts, juries are afforded considerable latitude in awarding damages, and a jury's award should not lightly be set aside.  *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 566 (2d Cir. 1988)*; Ahlf v. CSX Transp.*, *Inc.,* 386 F. Supp. 2d 83, 87 (N.D.N.Y. 2005)*; see also Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir. 1996).  When asked to review a jury's damage award on a motion for a new trial, the trial court must determine whether the amount awarded is "so high as to shock the judicial conscience and constitute a denial of justice."  *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.,* 850 F.2d 876, 883 (2d Cir. 1988) (quoting *Zarcone v. Perry*, 572 F.2d 52, 56-57 (2d Cir. 1978)), *cert. denied,* 488 U.S. 967, 109 S. Ct. 495 (1988); *see also Lee,* 101 F. 3d at 808.  If a court determines that this high threshold showing has been made, a trial court "may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Sys., Inc. v. Norse Sys., Inc.,* 49 F.3d 93, 96 (2d Cir. 1995) (citation omitted); *see also Lee,* 101 F.3d at 808; *Ahlf*, 386 F. Supp. 2d at 87.

### 1.    Compensatory Damages

The evidence adduced at trial regarding the lingering effects of the excessive force applied to the plaintiff on February 25, 2003, and again on March 5, 2003, was both extensive and diverse.  The evidence reflected that plaintiff physically suffered a broken rib as a result of the incidents and has experienced an ongoing lumbar back condition involving at least one herniated disc, which a jury could fairly have attributed to the assaults.  Plaintiff also testified that during the first incident he lost consciousness, and has since developed chronic headaches, and further noted that the beating was so severe that he defecated himself, a matter which is corroborated by photographs taken following the incident.

The evidence regarding the psychological impacts of the defendants' actions was equally, if not more, compelling.  Plaintiff testified to experiencing repeated thoughts of suicide, recurrent nightmares and flashbacks of the incidents, debilitating fear of the presence of law enforcement officers, fear of crossing the street, and other severe anxiety, stemming from the events at Oneida.  That testimony was buttressed by medical records revealing that Martinez has been diagnosed with PTSD, and the testimony of licensed clinical social worker Janick who has treated the plaintiff on an ongoing, weekly basis since the initiation of their social

worker/patient relationship.

Against this backdrop, the court does not view the jury's award of compensatory damages for pain and suffering, mental anguish, and emotional distress as excessive. Unlike economic loss, which can often be quantified to a reasonable degree of mathematical certainty, assessment of damages for pain and suffering, mental anguish, and emotional distress does not lend itself to the same degree of precision. For this reason, a jury's award of such damages should not be overturned unless the amount clearly exceeds the damages which a reasonable jury could award based upon the evidence adduced and the court's jury instructions. *Ahlf,* 386 F. Supp. 2d at 87; *see also Tinnerholm v. Parke, Davis & Co.*, 411 F.2d 48, 55 (2d Cir. 1969); *Morgan v. Consol. Rail Corp.*, 509 F. Supp. 281, 287 (S.D.N.Y. 1980).

In this instance, the jury's awards of compensatory damages for pain and suffering, mental anguish, and emotional distress compare favorably to other comparable cases where medical proof of serious physical and/or psychological injury resulting from a civil rights deprivation or other actionable conduct is demonstrated. *See, e.g., Ismail*, 899 F.2d at 186-87 (upholding $650,000 in compensatory damages to a plaintiff

who as a result of a beating by a police officer sustained head trauma, displaced vertebrae, cracked ribs, and suffered from considerable mental and emotional injury); *Park v. Shiflett*, 250 F.3d 843, 853-54 (4th Cir. 2001) (awarding $300,000 in compensatory damages to a plaintiff that was sprayed twice in the face with pepper spray by sheriff's deputies and developed PTSD as a result of the incident)*; Hygh v. Jabobs*, 961 F.2d 359, 361, 366 (2d Cir. 1992) (upholding a compensatory damages award in the amount of $216,000 for use of excessive force by a police officer where plaintiff suffered a blow to his face which fractured his cheekbone and required surgery, but no evidence of mental, emotional, or psychological suffering was offered).

Based upon the foregoing, I conclude that the jury's compensatory damage award does not fall outside of the range of what a reasonable jury could grant under the circumstances presented, and therefore decline the defendants' invitation to disturb the jury's verdict and either order a new trial or order a remittitur regarding compensatory damages.

2.   Punitive Damages

In their motion, defendants also complain of the jury's award of punitive damages, totaling $900,000.  The defendants' attack on the jury's

punitive damage award is two-pronged.  First, defendants complain of the procedure utilized by the court, whereupon the jury was first asked whether punitive damages should be awarded and then, after affording the parties an opportunity to offer additional proof, the jury was instructed to return to deliberate further and consider the amount of punitive damages to be awarded.  Additionally, the defendants assert that the punitive damage award is shockingly excessive.

The first argument raised by the defendants in support of their challenge to the punitive damage award is easily dispensed with.  While the court could have requested that the jury consider the amount of punitive damages to be awarded as part of its initial deliberations, I chose instead to follow the established procedure in this court, by which the jury is first asked whether punitive damages should be awarded and then, after affording the parties an opportunity to make additional evidentiary submissions, the jury is next requested to consider the appropriate amount of punitive damages to be awarded.  *See Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2d Cir. 1991).  After the jury signaled its intention to award punitive damages, a recess was taken in order to allow the attorneys to consult with their respective clients and determine whether

any additional evidentiary materials would be offered on the question of the amount of punitive damages to be awarded.  When court was reconvened, both sides announced that they did not desire to offer any further proof on the question of punitive damages.  At no time did defendants object to the procedure utilized by the court, nor was an adjournment requested in order to permit additional evidence to be secured.  Under these circumstances, defendants have waived any claim of prejudice associated with this procedure.  *See Smith v. Lightning Bolt Prod., Inc.*, 861 F.2d 363, 373-74 (2d Cir. 1988); *see also Caruso v. Forslund*, 47 F.3d 27, 30-31 (2d Cir. 1995).

The more troublesome issue concerns the amounts awarded. Punitive damages were awarded by the jury against four individuals, all corrections officers employed by the DOCS, in varying amounts ranging from a low of $50,000 up to $500,000, in the case of defendant Thompson.  Defendants assert that these awards are excessive.

Punitive damages may be awarded in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct.

1625, 1640 (1983); *see also Lee,* 101 F.3d at 808.  A jury's award of punitive damages is subject to scrutiny by the trial court, and may be deemed excessive if it is "'so high as to shock the judicial conscience and constitute a denial of justice.'"  *Hughes,* 850 F.2d at 883 (citation omitted); *Ismail,* 899 F.2d at 186 (citation omitted).   Analysis of whether a punitive damage award is unduly excessive is informed by the "guideposts" enunciated by the United States Supreme Court in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574-75, 116 S. Ct. 1589, 1598-99 (1996), including 1) the level of reprehensibility of the underlying conduct; 2) the ratio of punitive damages to compensatory damages awarded; and 3) comparison between this remedy and civil penalties authorized or imposed in comparable cases.  *Lee,* 101 F.3d at 809.

Consideration of the first *Gore* factor does not support defendants' argument.  In this instance the punitive damage awards against the four defendants relate to their use of excessive force upon the plaintiff, or their failure to protect him from assaults by fellow officers.  It goes without saying that the jury obviously regarded such conduct as significantly unconscionable and reprehensible, a factor which supports an award of punitive damages in significant amounts.  *See DiSorbo v. Hoy*, 343 F.3d

27

172, 186-87 (2d Cir. 2003).

Turning to the ratio between compensatory and punitive damages, it should be noted that there is no bright line test to be applied.  In *Gore*, the Court concluded that a 500:1 ratio was "breathtaking" and could not be sustained. 517 U.S. at 583, 116 S. Ct. at 1603.  The comparisons between the compensatory and punitive damage awards in this case, including 5:2 in the case of defendant Thompson, 1:1 for defendants Sisco and LaBrague, and 2:1 for defendant Duvall, do not come anywhere near approaching that ratio.  The court finds no reason to conclude that the ratios involved in this case are unduly disproportionate.  *See Patterson v. Balsamico*, 440 F.3d 104, 121 (2d Cir. 2006) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24, 111 S. Ct. 1032, 1046 (1991)) (upholding a punitive damage award of "more than 4 times the amount of compensatory damages").

It is in the third *Gore* arena that the verdict in this case comes into question.  Similar cases in which punitive damages have been awarded against corrections workers in section 1983 cases disclose that the damages awarded in this instance are exceedingly disproportionate, and that the defendants could not have reasonably anticipated such awards

based upon their conduct.  *See King v. Macri*, 993 F.2d 294, 298-99 (2d Cir. 1993) (finding punitive awards for an excessive force claim, which included allegations by the plaintiff of being punched and put in a choke-hold after he was handcuffed by two court security officers, in the amounts of $175,000 and $75,000 were excessive and reducing the amounts to $100,000 and $50,000, respectively); *Lee*, 101 F.3d at 812-13 (reducing a punitive damage award to a victim of a police assault from $200,000 to $75,000); *Ismail*, 899 F.2d at 186 (upholding a punitive damage award in the amount of $150,000 where the plaintiff suffered two displaced vertebrae, a cracked rib, and serious head trauma as the result of a police assault); *O'Neill v. Krzeminski*, 839 F.2d 9, 13-14 (2d Cir. 1988) (upholding an aggregate punitive damages award in the amount of $185,000 against two defendants for excessive force and denial of medical care where the plaintiff was beaten about the face and head while handcuffed and dragged by the throat to a holding cell where he was left bleeding).

Comparing the award to other comparable cases, I conclude that each of the four punitive damage awards in this case is shockingly excessive, and therefore will grant defendants' motion for a new trial

unless plaintiff agrees to accept remittiturs, as follows:

| Defendant | Original Punitive Award | Remittitur Amount | Revised Punitive Damage Award |
|---|---|---|---|
| Scott Thompson | $500,000 | $400,000 | $100,000 |
| Michael Duvall | $200,000 | $125,000 | $ 75,000 |
| Larry Sisco | $150,000 | $125,000 | $ 25,000 |
| Rolland LaBrague | $50,000 | $40,000 | $10,000 |

### d)  Comment During Plaintiff's Summation

The fourth and final argument asserted by the defendants in support of their application for a new trial centers upon a statement made by plaintiff's counsel during summation, characterized by the defendants as a deliberate misrepresentation offered with the intent to confuse or inflame the jury.  The comment in dispute relates to defendants' failure to produce and offer into evidence a log book for the Oneida dormitory in which plaintiff was housed on February 25, 2003, the suggestion being that it would have demonstrated that defendant Thompson was lying about what that log book would have demonstrated.[6]

---

[6]    While defendants do not specifically note the precise language of which they now complain, it appears that their argument relates to the following statements of plaintiff's counsel:

> [a]nd what is most interesting, and you might have just picked up on this this morning during my questioning of Officer Sipley, there is a log book for all the dorms, all the housing units, and the M dorm had a log book that morning. And presumably, we haven't seen the log book, they have not produced this log book, that log book would answer the

There are several reasons why this portion of defendants' motion does not justify setting aside the jury's verdict and/or granting a new trial. On the outset, it should be noted that a party seeking a new trial on the basis of the conduct of trial counsel, and in particular allegedly improper statements in the jury's presence, is confronted with a substantial burden; "[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (citation and quotations omitted), *cert. denied*, 528 U.S. 1119, 1120 S. Ct. 940 (2000).  When a jury's verdict is

---

question as to whether or not Officer Thompson was on duty in the morning when Angel Martinez went out for his medical trip, because once he comes on duty, he stamps that template, he is now on duty.  Anything that happens after he comes on duty gets recorded line by line chronologically in the log book.

So, if Thompson were telling the truth, this log book would have Angel leaving the dorm at some point and then later on it would have Thompson coming on duty.  If that were the case, guess what, we'd see the log book.  If the log book had, as we are arguing, Thompson coming on duty in the morning and then underneath there inmate Martinez going to his medical trip, they would not produce that.  Because if they produced that log book, do you know what you all would say?  Thompson's lying.  He knew he was out on that medical trip, there was no emergency when he came back.  That door was not left unlocked because this unknown stranger is coming into his dorm.

Transcript of September 11, 2008 Trial Proceedings (Dkt. No. 178) at pp. 758-59.

supported by the evidence at trial, statements improperly made by trial

counsel are generally regarded as *de minimis* when placed in the context

of the trial as a whole.  *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120,

124 (2d Cir. 2005) (citing *Pappas v. Middle Earth Condo., Ass'n*, 963 F.2d

534, 540 (2d Cir. 1992)).

   With this as a backdrop, I note that that defendants did not object to

this statement at a time when a proper curative instruction could have

been granted, had the court discerned an impropriety.  This failure itself

provides an independent basis on which the court could deny this portion

of defendants' motion absent a conviction that the statement was

egregious as to deprive the defendants of a fair trial, a finding which this

court is not prepared to make.  *Ragona v. Wal-Mart Stores, Inc.*, 210 F.3d

355 (2d Cir. 2000).

   Moreover, defendants' argument must be considered in light of the

court's jury instruction, which the jury is presumed to have followed, *see*

*U.S. v. Elfgech,* 515 F.3d 100, 131 (2d Cir. 2008), advising that "the law

[does not] require any party to produce as exhibits all papers and things

mentioned in evidence in this case."  Consequently, while plaintiff's

counsel may well both have suggested the availability of the M dormitory

32

log books and intimated that they were not produced because they would not support officer Thompson's testimony, the jury was made aware that defendants were under no obligation to produce that document.

Having carefully reviewed the summation of plaintiff's counsel, if there was an inappropriate remark made, I find no basis to conclude that it was sufficiently flagrant to deprive plaintiff of a fair trial.  This, then, provides no basis for the grant of a new trial.

B.   Plaintiff's Cross-Motion

In his cross-motion plaintiff seeks recovery of attorneys' fees in the amount of $242,083, together with an additional award of costs and disbursements of $10,356.83.[7]  Dkt. Nos. 180, 184-86.  Plaintiff's motion is supported by a summary, purportedly derived from contemporaneous time records, of the attorney's efforts expended on plaintiff's behalf, as well as an itemization of disbursements involved.[8]

---

[7]    In his application plaintiff does not seek compensation for work performed by the firm's office manager, who also serves as a licensed paralegal, or for work performed by third-year and first-year law students.  It is estimated that the time expended collectively by those individuals in connection with this action exceeded 200 hours.

[8]    In his initial application, plaintiff sought recovery of costs and disbursements in the amount of $10,125.83 and attorneys' fees totaling $236,530.  *See* Dkt. No. 180.  That request was later revised to reflect an additional eight hours of work, bringing the total to $239,633, and additional charges of $231 billed to plaintiff's attorneys by United Process Service, a company engaged to effectuate service of

1.   Attorneys' Fees Generally

A party who succeeds in establishing a constitutional deprivation in an action pursuant to 42 U.S.C. § 1983 is permitted by statute to recover litigation costs, including reasonable attorneys' fees.  42 U.S.C. § 1988.[9] Under section 1988 – which represents a significant departure from the general "American Rule", requiring that a litigant, however successful in the pursuit of claims, bear his or her costs and attorneys' fees – a prevailing plaintiff in a section 1983 action is generally entitled to recover reasonable costs and attorneys' fees.  *Marek v. Chesny*, 473 U.S. 1, 8-9, 105 S. Ct. 3012, 3016-17 (1985).  The practice of awarding attorneys' fees to prevailing plaintiffs in civil rights actions such as this serves "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel."  *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982).  Since plaintiff is clearly a prevailing party in this matter, and

---

subpoenas in the case.  *See* Dkt. No. 184.  Plaintiff's attorneys have since submitted an amended exhibit regarding the hours expended on the case by Glenn Miller, indicating that his total time was actually 282 hours, as opposed to 274.9 hours.  *See* Dkt. No. 186.  Based upon plaintiff's latest submission, his total fee request now amounts to $242,083.

[9]      That section authorizes the court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in a civil rights action brought under 42 U.S.C. § 1983.  42 U.S.C. § 1988(b).

the defendants do not argue otherwise, I find that an award of costs and

attorneys' fees is warranted.

The question of how much to award as costs and attorneys' fees is a

matter entrusted to the sound discretion of the court.  *Reed v. A.W.*

*Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (citation omitted).

For many years the methodology to be employed in exercising the

discretion, at least in this circuit, was well-established and widely

understood.  *See, e.g., Reed*, 95 F.3d at 1183-84; *Hogan v. General Elec.*

*Co.,* 144 F. Supp. 2d 138, 141-42 (N.D.N.Y. 2001) (Hurd, J.); *Doe v.*

*Kaiser*, No. 6:06-CV-1045, 2007 WL 2027824, at *9 (N.D.N.Y. July 9,

2007) (Peebles, M.J.).  Earlier this year, however, a panel of the United

States Court of Appeals for the Second Circuit, which included now-retired

Supreme Court Justice Sandra Day O'Connor, sitting by designation, took

occasion to revisit the issue.  *See Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183-84 (2d Cir.

2008).  After briefly reviewing the history of attorneys' fees jurisprudence,

including within the Second Circuit, the *Arbor Hill* court constructed a new

framework for examining fee applications, eschewing the traditional, two-

step process of making the "lodestar" calculation, followed by an

adjustment of the lodestar amount to account for case-specific factors, referred to in that decision as "an equitable inquiry of varying methodology while making a pretense of mathematical precision", *id*. at 189 (citation omitted), in favor of a new "'presumptively reasonable fee'" model.  *Id.* at 183-89 (citation omitted).

Under the newly-announced protocol, a court must first consider whether the rates at which compensation is sought are those which a "reasonable, paying client would be willing to pay," before multiplying the number of hours expended by that figure.  *Id.* at 183-184; *see also Lewis v. City of Albany Police Dep't*, 554 F. Supp. 2d 297, 298 (N.D.N.Y., 2008) (Hurd, J.) (noting that "[a]ttorney's fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours").  Determination of the rate at which a reasonable client would willingly compensate an attorney for the services rendered is informed by several factors of varying degrees of relevance,

> including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . the timing demands of the case, [and] whether an attorney might have an interest (independent of

that of his client) in achieving the ends of the litigation[.]

*Arbor Hill*, 522 F.3d at 184.[10]  The court in *Arbor Hill* cautioned that a court should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.  In making the final determination of an amount to be awarded to a prevailing party in a case such as this, the court "must 'examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case'" and consider "'its own familiarity with the case and its experience generally [in addition] to the evidentiary submissions and arguments of the parties'" to determine the

---

[10]    *Arbor Hill* also reinforced the appropriateness of considering the so-called "*Johnson* factors", when establishing a reasonable rate; those factors include

> (1) the time and labor required; (2) the novelty and the
> difficulty of the questions; (3) the level of skill required to
> perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case;
> (5) the attorney's customary hourly rate; (6) whether the fee
> is fixed or contingent; (7) the time limitations imposed by
> the client or circumstances; (8) the amount involved in the
> case and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of
> the professional relationship with the client; and (12)
> awards in similar cases.

*See Arbor Hill*, 522 F.3d at 186-87, n.3, 190 (discussing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d, 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

reasonableness of the fee request.  *Arbor Hill*, No. 03-CV-502, 2005 WL

670307, at *7-8 (N.D.N.Y. Mar. 22, 2005) (Homer, M.J.) (quoting *DiFilippo*

*v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

### 2.   PLRA Attorneys' Fee Limitations

As a threshold matter, the court must determine the effect, if any, of

42 U.S.C. § 1997e(d) on plaintiff's fee application in this case.  Section

1997e(d) effectively caps an attorney's fee application in certain

circumstances, and directs that at least a portion of the fees should

initially be offset against any judgment obtained by an inmate litigant.

The inmate litigation landscape was considerably altered in 1996

with the passage of the Prison Litigation Reform Act ("PLRA"), Pub. L.

104-134, 110 Stat. 1321 (1996).  One feature introduced under the PLRA

was a provision which effectively caps recovery under 42 U.S.C. § 1988 of

attorneys' fees in an inmate civil rights action to 150% of the amount of

the judgment entered in the case.[11]  *Torres v. Walker*, 356 F.3d 238, 242

---

[11]   42 U.S.C. § 1997e(d) provides, in relevant part, as follows:

(1) In any action brought by a prisoner who is confined to
any jail, prison, or other correctional facility, in which
attorney's fees are authorized under section 1988 of this
title, such fees shall not be awarded, except to the extent
that --

(A)   the fee was directly and

(2d Cir. 2004).  That section also goes on to restrict the hourly rate to be used in calculating such fee awards.  42 U.S.C. § 1997e(d)(3).

As defendants tacitly acknowledge by not having addressed this issue, the strictures of section 1997e(d) do not apply in an action filed by a former prison inmate after his or her release, even if the civil rights violation at issue is alleged to have occurred while the plaintiff was incarcerated.  *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Morris v. Eversley*, 343 F. Supp. 2d 234, 239-40 (S.D.N.Y. 2004).  Section 1997e is therefore not directly applicable in plaintiff's case, since he had been

_____

> reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B)(I)  the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant.  If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(1) & (2) (internal footnotes omitted).

released from custody by the time of trial.

### 3.    Calculating the Appropriate Reasonable Hourly Rate

_____In his application, plaintiff seeks recovery of fees calculated at an

hourly rate of $350 for both of the attorneys who worked on the case.

Defendants challenge the hourly rates claimed as excessive in light of the

nature of the work and the geographical region in which it was performed.

Although the law offices of plaintiff's attorneys are located in New

York City, the appropriate rates to apply are the prevailing rates within the

Northern District of New York.  *See Luciano v. Olsten Corp.* 109 F.3d 111,

115-16 (2d Cir. 1997) (finding that is was proper for a district judge to use

the rates of the Eastern District of New York instead of the Southern

District, where plaintiff's lawyer was from, in a Title VII case where the

action "was commenced and litigated" in the Eastern District).  While

roundly criticized by the Second Circuit, to the extent that it sought to

establish a schedule of firm hourly rates for all fee applications submitted

in the Northern District of New York regardless of the nature of the

particular case and type of legal services involved, this court's decision in

*Arbor Hill* nonetheless provides a helpful frame of reference for

determining the rates which a reasonable, paying client would be willing to

pay to obtain services of the type rendered by plaintiff's counsel in this action in Central New York.  In *Arbor Hill,* a case in which the plaintiffs sued seeking vindication of rights secured under the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, the court found it appropriate, based upon the particular circumstances of that case, to grant recovery calculated based upon the hourly rates of "$210 for experienced attorneys, $150 for associates with more than four years of experience, $120 for less experienced associates, $80 for paralegals[,] and the traditional one-half of these rates for time spent traveling." *See Arbor Hill*, 419 F. Supp. 2d at 211, *aff'g, Arbor Hill*, 2005 WL 670307, at *6.

To be sure, the rates articulated in *Arbor Hill* are not necessarily dispositive of those which appropriately should apply in this instance.  As plaintiff notes, the decision setting out those rates was issued in 2005 and one would reasonably expect that the controlling market rates have increased significantly since that time.  Although some jurists from this district have adhered to the *Arbor Hill* rate schedule, despite the passage of time and the Second Circuit's criticism of such a fixed approach, *see*, *e.g.*, *Lewis*, 554 F. Supp. 2d at 298-301; *Picinich v. United Parcel Serv.*, No. 5:01-CV-01868, 2008 WL 1766746, at *2 (N.D.N.Y. Apr. 14, 2008)

(McCurn, J.); *Paramount Pictures Corp. v. Hopkins,* No. 5:07-CV-593,

2008 WL 314541, at *5 (N.D.N.Y. Feb. 4, 2008) (Scullin, S.J.), others

have resisted a wooden application of *the Arbor Hill* rates and have

awarded fees calculated at higher rates.  *See, e.g.*, *Trudeau v. Bockstein*,

No. 05-cv-1019, 2008 WL 3413903, at *5-6 (N.D.N.Y. Aug. 8, 2008)

(Sharpe, J.) (awarding attorneys' fees at hourly rates of $345, $275, $250,

and $190 for local counsel);  *Luessenhop v. Clinton County, N.Y.*, 558 F.

Supp. 2d 247, 266-67 (N.D.N.Y. 2008) (Treece, M.J.) (noting that the

"prevailing market hourly rate is now higher than $210" and awarding

attorney's fees at a rate of $235) (citation omitted); *Overcash v. United*

*Abstract Group, Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008) (Sharpe,

J.) (awarding attorney's fees at an hourly rate of $250 to a local attorney)*;*

*Kaiser*, 2007 WL 2027824, at *9-10 (attorney's fee award calculated at an

hourly rate of $250 based on consideration of what a reasonable client of

the Syracuse, New York community would pay and the experience of the

attorney); *Hoblock v. Albany County Bd. of Elections*, No. 1:04-CV-1205,

2006 WL 3248402, at *3 (N.D.N.Y, Nov. 7, 2006) (Kahn, J.) (awarding

attorney's fees at an hourly rate of $225).

    Unfortunately, neither plaintiff's fee application nor defendants'

response provides any information regarding the prevailing market rates in
the Northern District of New York for trial attorneys experienced in the field
of civil rights litigation.  Given this void, the court is left to draw upon its
own experiences and familiarity with rates within the district, as well as
those awarded in other, similar cases.  *See Arbor Hill*, 2005 WL 670307,
at *5-6; *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209-11 (2d Cir.
2005); *Luessenhop,* 558 F. Supp. 2d at 263-65.

Perhaps chief among the relevant factors to be considered in
determining the appropriate rates to be applied are the experience,
reputation and ability of the attorneys involved.  *Johnson,* 488 F.2d at 717-
19; *Luca v. County of Nassau,* No. 04-CV-4898, 2008 WL 2435569, at *8-
10 (E.D.N.Y. June 16, 2008) (modifying rates based on the attorneys'
level of experience).  Attorney Sivin has been licensed to practice law for
twenty-six years.  Siven's partner, Glenn Miller, has been practicing for
twenty-four years.  Over the course of their legal careers both have been
involved in litigating "dozens" of cases involving civil rights violations.  The
experience and background of attorneys Sivin and Miller have led to a
finding by another court, in 2006, that the rate of $350.00 per hour was
reasonable for their services.  *See Sylvester v. The City of New York,* No.

03 Civ. 8760, 2006 WL 3230152, at * 5-6 (S.D.N.Y. Nov. 8, 2006).

In addition to considering the experience levels and regular billing rates of the attorneys in question, I have drawn upon my experience and familiarity with rates charged within this district for services of the nature involved in this litigation.  Having considered all available information and relevant factors, I conclude that attorneys' fees in this case should be awarded utilizing the hourly rates of $275 per hour for each of the two attorneys involved.

### 4.    Presumptively Reasonable Fee

The next step in the fee calculation algorithm requires multiplication of the appropriate hourly rates by the number of hours reasonably expended by the respective professionals in representing the plaintiff.  In assessing plaintiff's fee application, I have taken note of the central principle that reasonableness is the touchstone upon which fees should be awarded.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  I have also considered that hours not "'reasonably expended'" by an attorney or firm may be excluded from the calculation of the total fee application, *id.* at 434, 103 S. Ct. at 1939 (citing S. REP. NO. 94-1011, at 6 (1976)), and further that any hours deemed to be

44

"excessive, redundant, or otherwise unnecessary" may similarly be

excluded from the fee request.  *Id.* at 434, 103 S. Ct. at 1939-40; *see also*

*Lake v. Schoharie County Comm'r of Soc. Serv.*, No. 9:01-CV-1284, 2006

WL 1891141, at *6-7 (N.D.N.Y. May 16, 2006); *Arbor Hill*, 2005 WL

670307, at *8 (quoting *Gierlinger v. Gleason*, 160 F. 3d 858, 876 (2d Cir.

1998)).

In addition to their challenge of the hourly rate sought, defendants

have raised several objections to plaintiff's fee application.  One such

objection concerns the use of two attorneys to represent the plaintiff,

including during the trial.  Utilization of more than one attorney in

connection with a particular litigation task, including at trial, is not

necessarily *per se* unreasonable; when confronted with a claim of

impermissible duplication or overlap,

> a trial judge may decline to compensate hours
> spent by collaborating lawyers or may limit the
> hours allowed for specific tasks, but for the most
> part such decisions are best made by the district
> court on the basis of its own assessment of what is
> appropriate for the scope and complexity of the
> particular litigation.

*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d

1136, 1146 (2d Cir. 1983).  In this instance, I find that some downward

45

adjustment is required in order to account for the duplication of effort on the part of plaintiff's counsel.  Throughout the course of trial, plaintiff was represented by two attorneys, both of whom are experienced attorneys billing at high rates.  I find nothing in the record now before me to justify such a practice in this case, and conclude that absent unusual circumstances not now presented, a reasonable paying client would not generally be willing to readily compensate for such an extravagance. While having two attorneys present at a trial in a matter of this magnitude may be somewhat defensible, there should be some adjustment to reflect the overlap.[12]

Another of defendants' objections to the plaintiff's fee application concerns the use of "block billing", where large amounts of time are recorded on the fee application with only such corresponding summary descriptions as "trial", "trial prep", and "review".  The use of the such summary descriptions is not particularly helpful in permitting the court to assess the reasonableness of the time expended.  Nonetheless, given the amount of time involved and the nature of the services rendered, I find it

---

[12]   It is noted that at trial, the defendants were represented by a single attorney, although as plaintiff notes he likely was assisted behind the scenes by his colleagues in the Attorney General's office.

would be unreasonable to require a particularization of the time spent at trial and for trial preparation, as well as for review of the file accumulated prior to the appearance of counsel, and conclude that the descriptions provided "conform to what a reasonable client compensating [his] or her attorneys on an hourly basis might expect them to delineate in periodic invoices seeking the payment of fees." *Sylvester,* 2006 WL 3230152, at *6. I therefore have opted not to make a further downward adjustment to reflect the block billing practices of plaintiff's counsel.

In determining the appropriate fee to approve, I have looked to awards in similar cases as providing an additional guidepost for determining reasonableness. In this instance it appears that plaintiff's fee application, as I contemplate adjusting it, compares favorably to awards made in other similar cases. *See Markon v. Bd. of Educ. of the City of Chicago*, 525 F. Supp. 2d 980, 981, 984 (N.D.Ill. 2007) (awarding $181,966.22 in fees and costs in a single-plaintiff ADEA action); *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1209 (N.D.Iowa 2003) (awarding $174,927.14 in fees and costs in a single-plaintiff Title VII discrimination suit*); Kulling v. Grinders for Industry, Inc.*, 185 F. Supp. 2d 800, 803, 826 (E.D.Mich. 2002) (awarding $190,197.33 in attorney's fees

47

and costs in three-plaintiff ADEA action); *Reeves v. Sanderson Plumbing Products, Inc.*, No. 1:96-CV-197-S-D, 2001 WL 1524412, at *9 (N.D.Miss. May 14, 2001) (awarding fees and costs totaling $184,571.39 in a case involving ADEA and state law claims); *Rabin v. Wilson-Coker*, 425 F. Supp. 2d. 269, 275 (D. Conn. 2006) (awarding fees and costs in the amount of $145,437.11 in a section 1983 action); *Lake,* 2006 WL 1891141, at *12 (awarding $143,774.55 in costs and attorneys' fees in a section 1983 action); *Diamond "D" Const. Corp. v. New York State Dept. of Labor*, 2005 WL 2614955, at *10 (W.D.N.Y. 2005) (awarding $264,162.96 in attorneys' fees in a section 1983 action); *Tsombanidis v. City of West Haven*, 208 F. Supp. 2d 263, 288 (D. Conn. 2002) (awarding $234,254.63 in attorneys' fees and costs in a section 1983 action).

Applying the controlling fee award catechism, based upon my familiarity with the case and the legal fee landscape in this district, and reducing the award out of concern over the duplication of attorney effort, particularly at trial, I conclude that the fee application, calculated based upon the $275 per hour rate which I have found  to be reasonable and the numbers of hours expended, should be adjusted downward by a total of 20%, yielding a total fee recovery of $151,997.80 calculated as follows:

| Attorney | Rate | Hours Expended | Subtotal |
|---|---|---|---|
| Glenn Miller, Esq. | $275.00 | 282.00 | $ 77,550.00 |
| Edward Sivin, Esq. | $275.00 | 408.90 | $112,447.50 |
| | | Total: | $189,997.50 |
| | | 80% of Total: | $151,997.80 |

    5.   Costs

In addition to attorneys' fees, plaintiff has sought recovery of a total of $10,356.83 in costs.  Included within that figure, *inter alia*, are hotel charges in the amount of $2,452.26, process server expenses of $1,592.00, and transcript fees totaling $3,952.75.  Defendants oppose plaintiff's request for recovery of costs in part, arguing that they are excessive and largely unrecoverable.

In cases of this nature, a claim by a prevailing party for an award of attorney's fees may include those taxable under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920, as well as others beyond the ambit of those provisions, including "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."[13]

---

[13] In their opposition to plaintiff's application for an award of costs, defendants argue that plaintiff may properly seek only those costs taxable under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920, relying upon this court's decision in *Silvera v. Burge,* Civil Action No. 9:02-CV-882 (DEP) (N.D.N.Y.,

*Lake*, 2006 WL 1891141, at \*11 (quoting *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989)); *see also Hogan v. General Elec. Co.,* 144 F. Supp. 2d 138, 143 (N.D.N.Y. 2001) (Hurd, J.).  A prevailing plaintiff may not, however, recover unexceptional, incidental overhead expenses.  *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998).  "Whether a particular item constitutes ordinary overhead or an awardable cost depends on whether the item is one normally absorbed within the attorney's fee or separately charged to a client."  *Arbor Hill,* 2005 WL 670307, at \*12 (citing *LeBlanc-Sternberg,* 143 F.3d at 763).  Typical of costs which are recoverable under circumstances such as those now presented are travel expenses, postage costs, photocopying charges, and the expense of placing telephone calls.  *See Amato v. City of Saratoga Springs,* 991 F. Supp 62, 68 (N.D.N.Y. 1998) (citations omitted).

Defendants object to portions of plaintiff's application for recovery of costs.  First, defendants assert that plaintiff is not entitled to reimbursement for the cost of obtaining the trial transcript.  Despite

---

filed July 5, 2002).  That case, however, is inapposite since the opinion was issued in response to the filing of a bill of costs by the prevailing plaintiff in that action.  In that instance neither Silvera nor his appointed, *pro bono* counsel applied to the court for costs and attorneys' fees under 42 U.S.C. § 1988.

defendants' objection, the court finds that the expense associated with obtaining a copy of the trial transcript is compensable under section 1988. *See Mercy v. Suffolk County*, 748 F.2d 52, 54 (2d Cir. 1984).

Defendants next challenge plaintiff's application for reimbursement of hotel room charges, totaling $2,405.26 and apparently representing the cost associated with hotel charges not only for Attorneys Sivin and Miller, but additionally witness Janick, the plaintiff, and members of plaintiff's family. Defendants' point on this issue is well taken. While the expense associated with plaintiff's attorneys staying in a hotel, and reimbursement for their meals, are the types of charges which a paying client would customarily expect to be invoiced, there is no authority for granting costs under section 1988 associated with room and board for the litigating plaintiff. *Cf. Bridges v. Eastman Kodak Co.*, No. 91 Civ. 7985, 1996 WL 47304, at \*14 (S.D.N.Y. Feb. 6, 1996); *U.S. Media Corp., Inc. v. Edde Entm't, Inc.*, No. 94 Civ. 4849, 1999 WL 498216, \*8 (S.D.N.Y. July 14, 1999). Similarly, although the court has considerable discretion in this regard, the expense associated with the hotel room for a witness who testified briefly during the trial is not justified. *Cf. Raniola v. Bratton*, 2003 WL 1907865, at \*8 (S.D.N.Y. April 21, 2003); *Bridges*, 1996 WL 47304, at

*15.  Accordingly, I will discount the hotel expense and award half of the amount sought, or $1,236.13.

Defendants' third objection relates to expense associated with providing a court interpreter who was not used at trial.  The court agrees that this amount is not compensable under the circumstances presented.

Defendants' next objection relates to the amount sought in connection with witness Christine Janick, including the cost of her air transportation and car fare, totaling $516.00.  Once again I agree with defendants, who argue that compensation for witness Janick should be limited to her per diem rate of $40, plus statutory mileage.  The court has determined that the distance between Ossining, New York where Ms. Janick apparently resides, and Syracuse, New York is 233 miles, making a round trip to and from Syracuse equal to 466 miles.  Reimbursed at the applicable mileage rate in effect at the time of trial, or 58.5 cents per mile, plaintiff is entitled to recovery for $272.61 in mileage and an additional $40, representing her per diem witness fees, for a total of $312.61.

Another objection registered by the defendants concerns the amount sought for photocopying, in the sum of $166.73.  The reasonable expense associated with photocopying is generally allowable in a case such as

this.  *See, e.g., LeBlanc-Sternberg*, 143 F.3d at 763.  While more in the way of specifics could have been provided, the court does not conclude that the amount sought is patently unreasonable, and therefore will award $166.73 as reimbursement for photocopies made in Syracuse.

Defendants' last objection relates to various miscellaneous expenses reimbursement of which are now sought, including for retention of a private investigator ($492.42), services of an agency for the service of subpoenas ($1,361), and the costs of obtaining medical records ($412.12).  Recognizing that the touchstone of whether to award these costs includes whether a reasonable paying client would expect to be invoiced these expenses, and not whether they relate to witnesses who necessarily testified at trial, as perhaps would be the case with an application made or a bill of costs filed under Rule 54(d) and section 1920, I find that the expenses in question are recoverable.

Under the circumstances, I will approve the award of costs and disbursements sought by the plaintiff, as modified consistent with this opinion, calculated as follows:

| Category | Amount |
|---|---|
| Wunder Investigations | $   492.42 |

| | |
|---|---|
| Medical records | $  412.12 |
| Gas and tolls to and From Syracuse | $  197.55 |
| Hotel Charges | $1,236.13 |
| Parking in Syracuse | $   45.00 |
| Mileage and Per Diem for Christine Janick | $  312.61 |
| United Process Service | $1,592.00 |
| Federal Express | $   80.00 |
| Photocopies in Syracuse | $  166.73 |
| Trial Transcript (Eileen McDonough) | $3,952.75 |
| Total: | $8,487.31 |

## IV.  SUMMARY AND CONCLUSION

After hearing nearly a week's worth of testimony and reviewing hundreds of pages of documents received in evidence, and following a fairly lengthy period of deliberation, the jury in this case rendered a verdict finding in plaintiff's favor against certain but not all of the defendants in each of the four remaining claims in the action, and awarded significant amounts of compensatory and punitive damages.  When the jury's verdict is measured against the evidence offered at trial, viewed in a light most favorable to the plaintiff, it is well supported and the compensatory damage awards made are not unduly excessive.  The punitive damage awards rendered, however, are shockingly excessive, and I therefore will

grant defendants' motion for a new trial unless the plaintiff agrees to accept remittiturs in the amounts described above.

Turning to plaintiff's cross-motion, as a prevailing party Martinez is entitled to an award of costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.  Having carefully considered plaintiff's fee application, the court will award fees in the amount of $151,997.80 and costs in an additional amount of $8,487.31.

Based upon the foregoing, it is hereby

ORDERED as follows:

1)   Defendants' motion for judgment as a matter of law (Dkt. No. 173) is DENIED.

2)   Defendants' motion for a new trial (Dkt. No. 173) is GRANTED unless plaintiff agrees to remit portions of the punitive damage awards returned by the jury, including $400,000 of the award against defendant Scott Thompson, $125,000 of the award against defendant Michael Duvall, $125,000 of the award against defendant Larry Sisco, and $40,000 of the award against defendant Robert LaBrague.

3)   Plaintiff's cross-motion for an award of costs, including reasonable attorneys' fees (Dkt. No. 180), is GRANTED, subject to the

adjustments reflected above.

    4)    If the plaintiff accepts the remittitur, the clerk is directed to

enter an amended judgment in this action reflecting the revised punitive

damages amounts and the additional award of attorneys' fees in the sum

of $151,997.80, and disbursements in the additional amount of $8,487.31,

for a total award of costs in the amount of $160,485.11.

    5)    The clerk is directed to promptly forward copies of this order to

the parties pursuant to the court's local rules.


_____
David E. Peebles
U.S. Magistrate Judge


Dated:    December 8, 2008
           Syracuse, NY